Edward J. FOSSIE, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1695.

United States Court of Veterans Appeals.

Oct. 30, 1998.

Kenneth M. Carpenter, Topeka, KS, was on the brief, for appellant.

John H. Thompson, Acting General Counsel, with whom Ron Garvin, Assistant General Counsel, R. Randall Campbell, Deputy Assistant General Counsel, and Mary Ann Flynn, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and GREENE, Judges.

FARLEY, Judge:

This is an appeal from a November 26, 1996, Board of Veterans' Appeals (Board or BVA) decision which denied service connection for post-traumatic stress disorder (PTSD). Both parties have filed briefs. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the Board.

## I. FACTS

The veteran, Edward J. Fossie, served in the U.S. Army from December 1965 to December 1967, one year of which was served in Vietnam. R. at 17, 153, 156. His military occupational specialty was stock control and accounting. R. at 17, 154.

In October 1981, the appellant filed a claim for, inter alia, delayed stress syndrome. R. at 63. He alleged that although he was assigned to work as a file clerk, he did on occasion have duties as a rifleman and thereby witnessed many casualties. R. at 74. The examiner, however, found that the veteran's symptoms did not meet the criteria for PTSD and the claim was denied. R. at 74–80.

In 1990, the appellant again applied for, inter alia, service connection for PTSD. R. at 93–98. A December 1990 VA examination form noted under the heading for "Nervous System": "PTSD—see psychiatry consult. Unable to sleep." R. at 110. Under the heading for "Remarks," the examiner noted "Hx PTSD since 1967—takes Librium 1–2 daily." *Id.* Under the heading for "Diagnoses" he reported, inter alia, "(3) PTSD—see psychiatry consult." *Id.*

The RO declined to reopen the claim, finding that new and material evidence had not been introduced and that PTSD was not noted in the record. R. at 119–20. The BVA remanded the claim in 1992 for additional development. R. at 146–47. Subsequently, a VA examiner, Dr. Bronson, examined the veteran and diagnosed him with (1) adult situational adjustment reaction with depressed mood; (2) alcohol dependency; and (3) personality disorder, not otherwise specified. Under the "Comment:" heading of the form, he additionally stated: "Insufficient findings for [PTSD] criteria." R. at 184. In a November 1992 VA survey, social worker Louis Gray reported, "Mr. Fossie states that he suffers from flashbacks, bad memories, poor sleep and lack of involvement resulting from PTSD. He has been poorly employed, once divorced, and been jailed several times for anti-social behavior." R. at 166. A few months later, the veteran submitted a statement describing his Vietnam experiences, but

was unable to remember dates for any treatment for PTSD. R. at 169–81.

The RO again denied the claim based on a lack of new and material evidence. R. at 186–89. The veteran then provided dates and places of treatment at the Memphis Vietnam Veterans Center and VA medical centers (VAMCs) in Memphis and St. Louis. R. at 195–97. He also submitted another statement and photographs, along with additional information on past treatment. R. at 209–30, 265. The RO subsequently obtained additional medical records of the appellant, but none of the records reported a diagnosis of PTSD. Records from 1972 reported treatment for atypical neuralgia, possibly of psychosomatic origin. R. at 240–42. A brain scan was normal. R. at 259–61. Records from 1974 reported treatment for cluster headaches. R. at 235. *See also* R. at 255–56. November 1990 records from the Lourdes Hospital emergency room noted complaints of anxiety, nervousness, insomnia, and headaches; the assessment was acute and chronic alcoholism. R. at 251–52.

In 1995, the BVA informed the veteran and his representative that the case may have been tampered with at the Board. R. at 275. His representative reviewed the claims file and determined that the claim was ready for final disposition. R. at 278–79. In 1996, the BVA again noted that the veteran's file had at one time been assigned to a former BVA employee convicted of tampering and concluded that evidence may have been removed from the claims file. Based on other evidence in the claims file, the BVA "considered the apparently missing document related to PTSD to be 'new and material' evidence which served to reopen the claim for service connection for PTSD." R. at 285. A remand was therefore ordered for the RO to obtain the "psychiatry consult" referred to in the December 1990 VA examination. R. at 110. In addition, the RO was instructed to request that (1) more detailed information on the in-service stressful events be provided by the veteran; (2) corroborating information be provided by the United States Army and Joint Service Environmental Studies Group (ESG); and (3) if necessary, the veteran be examined by a psychiatrist. R. at 284–95.

The RO was informed by a representative from the Marion VAMC that a review of the appellant's records revealed no indication that a psychiatric examination was ever conducted at the Marion VAMC nor at the St. Louis VAMC. R. at 313. The veteran submitted lay statements from his mother, a friend, and himself. R. at 308, 316–24. The veteran's representative argued that an examination should be conducted, asserting that the 1990 and 1992 examinations were too old to be contemporaneous. R. at 343–45. An examination, however, was not conducted. The decision was appealed to the BVA.

On appeal, the BVA assumed, based upon the 1990 "PTSD—see psychiatry consult" reference, "for purposes of this decision, without deciding, that PTSD is present, or was present at one time," and thereafter proceeded to address the existence of stressors. R. at 4. It noted that the veteran had failed to provide sufficiently detailed descriptions of his alleged stressful events and agreed with the RO's conclusion that the resulting statements were too vague for referral to ESG. The BVA concluded that "as a result of the veteran's failure to provide adequate information with regard to the claimed stressors, the Board cannot find that the diagnosed PTSD is the result of stressors in service." R. at 5. The claim was thus denied. This appeal followed.

The appellant alleges that his stressors include subjection to mortar fire, gun fire, sniper fire, and the witnessing of the deaths of numerous individuals. R. at 74, 169–73. He argues that the BVA is required to accept his lay testimony of stressors, citing 38 U.S.C. § 1154(b), and that he is therefore entitled to service connection. In the alternative, he argues that a remand is appropriate for the BVA to seek additional information from ESG. The appellant did not address the issue of the PTSD diagnosis.

The Secretary argues that the BVA erred in reopening the claim because the last disallowance in 1982 was based upon a lack of evidence of PTSD and the evidence submitted since then does not provide a diagnosis. Specifically, he points out that the 1990 VA examination only notes a history of PTSD. R. at 107–11. Regarding the reference to a

PTSD psychiatry consult, he argues that the record makes clear that no such examination took place and that the veteran has never contended otherwise. *See, e.g.,* 105, 116–17, 135–36. Finally, the Secretary notes that the 1992 VA examination (R. at 162–63) failed to diagnose PTSD. According to the Secretary, the doctor and the social survey merely reiterate the history provided by the veteran, without further medical enhancement, and consequently the evidence is not material. Moreover, even if there were an acceptable PTSD diagnosis, the evidence is still not material because no doctor has ever linked it to service. In the alternative, the Secretary argues that the claim is not well grounded because there is no clear diagnosis of PTSD and no medical nexus evidence. Any errors asserted by the veteran are of no significance, it is suggested, because under either scenario there was no duty to assist in the development of this claim.

## II. ANALYSIS

### A. New and Material Evidence

■ Where a final Board decision exists on a given claim, that claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered" by the Board. 38 U.S.C. § 7104(b). Similarly, when a claim is denied by the regional office, and the claimant fails to timely appeal by filing a Notice of Disagreement within the one-year period following the decision as prescribed in 38 U.S.C. § 7105(b)(1), that decision becomes final and the claim may not "thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with" title 38 of the United States Code. 38 U.S.C. § 7105(c); *see also Person v. Brown,* 5 Vet. App. 449, 450 (1993) (failure to timely appeal an RO decision within the one-year period renders the decision final). The exception to these rules states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993); *Thompson v. Derwinski,* 1 Vet.App.

251, 253 (1991); *see also Suttmann v. Brown,* 5 Vet.App. 127, 135–36 (1993) (applying § 5108 provisions for reopening final claims to RO decisions rendered final by operation of § 7105(c)). Therefore, once a Board or an RO decision becomes final under § 7104(b) or § 7105(c), "the Board does not have jurisdiction to consider [the previously adjudicated claim] unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find." *Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996); *Butler v. Brown,* 9 Vet.App. 167, 171 (1996) (When new and material evidence has not been submitted in a previously disallowed claim "[f]urther analysis ... is neither required, nor permitted.").

In determining that the evidence presented by the appellant qualified as "new and material" the Board, in February 1996, applied the materiality test adopted by this Court in *Colvin v. Derwinski,* 1 Vet.App. 171 (1991). Under the *Colvin* test, evidence was material when it was probative of the issue at hand and there was a reasonable possibility of a change in outcome when viewed in light of all the evidence of record. *Id.* This test was recently invalidated by the U.S. Court of Appeals for the Federal Circuit in *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998). The Federal Circuit reasoned that the "reasonably likely to change the outcome" requirement was not only unnecessarily stringent but also inconsistent with the promulgated regulation on point, 38 C.F.R. § 3.156(a), which merely requires that the newly submitted evidence "be so significant that it must be considered in order to fairly decide the merits of the claim." *Id.*

■ In light of the recent ruling in *Hodge,* the Court concludes that any evidence found to be material under the more stringent *Colvin* test would also have to be found to be material under the more flexible *Hodge* standard. Further, *Hodge* provides for a reopening standard which calls for judgments as to whether new evidence (1) bears directly or substantially on the specific matter, and (2) is so significant that it must be considered to fairly decide the merits of the claim. It thus is apparent that, to the extent that our *Colvin* decision provided for a

de novo review of reopening decisions, it has likewise been overturned. A deferential standard of review of these decisions under 38 U.S.C. § 7261(a) becomes the proper one. *See also Manio v. Derwinski,* 1 Vet.App. 140, 146 (1991). Since the Board, in February 1996, granted a reopening of the appellant's claim based upon the introduction of VA examinations in 1990, 1992, and the November 1992 social survey, which it determined to be new and material evidence under the more stringent test, the Court holds that the Board did not commit jurisdictional or other error when it reopened the appellant's claim.

### B. Well–Grounded Claim

■ The Secretary also argues that in the absence of a present PTSD disability and medical evidence linking that disability to the veteran's military service, the claim is not well grounded. Section 5107(a) of Title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The determination of whether a claim is well grounded is a matter of law which this Court reviews de novo. *Grivois v. Brown,* 6 Vet. App. 136, 139 (1994). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990).

■ The requisite elements of a well-grounded PTSD claim are: (1) a current medical diagnosis; (2) evidence "(presumed credible for these purposes) of an in-service stressor, which in a PTSD case is the equivalent of in-service incurrence or aggravation; and (3) medical evidence of a nexus between service and the current PTSD disability." 38 C.F.R. § 3.304(f); *Cohen v. Brown,* 10 Vet. App. 128, 137 (1997); *see also Moreau v. Brown,* 9 Vet.App. 389, (1996). For a PTSD claim to be well grounded all the elements must be present. *Cohen, supra.*

The BVA decision specifically notes that the appellant's claim is well grounded and that it is not implausible. R. at 3. The Secretary, however, argues that the BVA determination was an error because the record contains no evidence of either a current diagnosis, other than the mention of "the psychiatry consult" or any medical evidence of a nexus between service and PTSD.

> "PTSD—see psychiatry consult" is written in the diagnosis section of the general examination report; however, there is no evidence that such a consultation ever took place, nor is there any indication that the veteran was actually examined for the presence of PTSD on December 11, 1990. In the remarks section the doctor simply stated, "history of PTSD." In sum there is nothing about the report to suggest that the examiner was offering an independent medical opinion as to etiology rather than merely repeating what the veteran had reported. . . . Mr. Gray's social service report is similarly insufficient to well ground the claim since he simply recited the veteran's self-reported symptoms and opinions attributing those symptoms to PTSD. Mr. Gray offered no independent analysis or assessment of whether or not he thought the veteran had PTSD.

*See* Secretary's Brief at 17. Although the Secretary's contentions appear to be correct, the record reveals that the claim may have been considered well grounded in order to compensate the appellant for certain irregularities which may have potentially harmed his claim. Specifically, the February 1996 decision of the Board noted that the claim file had been assigned to a former employee who was later convicted of tampering with veterans' files. R. at 285. The Board also noted that it appeared from the record that a document relating to PTSD and another relating to a hearing disability may have been taken from the file. *Id.* Thus, "[b]ased on the claims file the Board has considered the apparently missing document related to PTSD to be 'new and material evidence' which serves to reopen the claims." *Id.* Similarly, the November 1996 Board decision here on appeal notes, "The Board will assume for the purposes of this decision, without deciding, that PTSD is present, or was present at one time." R. at 4. Thus it

appears from these statements that as a result of the possible illegalities that may have been committed, the BVA has fashioned a remedy for any wrongdoing that may have been done to the veteran by the BVA employee. In light of the irregularities surrounding this case and the "rather low" threshold for well grounding a claim, *see White v. Derwinski*, 1 Vet.App. 519, 521 (1991), the Court finds no basis to disturb the Board's conclusion.

### C. Merits of the Claim

The November 1996 decision of the BVA reached the merits of the claim and found that the preponderance of the evidence was against service connection. R. at 2. In denying service connection for a particular disabling condition, the Board makes a finding of fact which the Court reviews under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

The Board concluded that service connection would be improper because the appellant had not undergone the type of stressors that lead to PTSD. The standard to be used to establish in-service stressors depends upon whether or not the veteran engaged in combat. If the veteran engaged in combat, his lay testimony regarding lay stressors will be accepted as conclusive evidence of the presence of in-service stressors. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(f). If, however, the veteran was not engaged in combat, he must introduce corroborative evidence of his claimed in-service stressors.

*See* 38 C.F.R. § 3.304(f); *Cohen*, 10 Vet.App. 128.

Here, the Board determined that the appellant did not engage in combat. The appellant was assigned as a stock and accounting specialist. He also did not receive any of the recognized military citations which indicate combat. *See* 38 C.F.R. § 3.304(f). Moreover, none of the submitted evidence indicated that he was engaged in combat at any time. There is thus a plausible basis for the Board's determination as to combat experience and consequently finding inapplicable 38 U.S.C. § 1154(b), which provides, in pertinent part, "In the case of any veteran who engaged in combat with the enemy in active service ... the Secretary shall accept as sufficient proof of service connection of any disease or injury alleged to have been incurred in or aggravated by service satisfactory lay or other evidence of service incurrence." Instead, the veteran is required to provide evidence corroborating his stressors. Here, the Board found that he had not done so. Specifically, the Board noted,

> While he reported witnessing a number of deaths, he was unable to remember any names. The veteran's recent correspondence is consistent with earlier reports, which also refer to exposure to combat, but contain no details regarding such claimed exposure. Also of record are letters from a friend of the veteran and the veteran's mother. These letters describe the veteran's current condition as compared to his condition prior to service. However, no more specific information with regard to stressors is provided. The RO was instructed that after securing this information, the case was to be referred to the United States Army and Joint Service Environmental Studies Group (ESG). However, the RO concluded and the Board concurs, that the veteran's statements were too vague for referral to the ESG. The veteran was so informed in a July 1996 supplemental statement of the case, but he did not provide any additional information.

R. at 5. Thus, while the Board could assume, for purposes of well grounding the appellant's claim that the "psychiatry con-

sult" reference was indicative of a diagnosis of PTSD, it could not possibly conclude based on the record (1) that in-service stressors existed and (2) that there was a nexus between the diagnosis and any in-service stressors, as the elements of a PTSD claim require. The Court's review of the record reflects a similar void in evidence. Accordingly, there was a plausible basis for the Board's finding that service-connection was not warranted, and thus the BVA decision was not clearly erroneous.

### III. CONCLUSION

Upon consideration of the record and the parties' respective briefs, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert,* 1 Vet.App. at 58; *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court is also satisfied that the BVA decision meets the "reasons and bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b); *see Gilbert supra.* Accordingly, the November 26, 1996, decision of the BVA is AFFIRMED.