Walter EVANS, Jr., Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1574.

United States Court of Veterans Appeals.

Argued Sept. 29, 1998.

Decided Nov. 16, 1998.

Bill Russo, with whom Alexander P. Humphrey, IV, was on the brief, for appellant.

Gregory W. Fortsch, with whom John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; and Carolyn F. Washington, Deputy Assistant General Counsel, were on brief, for appellee.

Before FARLEY, HOLDAWAY, and GREENE, Judges.

FARLEY, Judge:

This is an appeal from a September 19, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which denied the appellant's claim for service connection for a bilateral knee disorder as secondary to a service-connected pes planus condition. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the September 19, 1996, BVA decision.

## I. FACTS

The appellant served on active duty in the U.S. Navy from January 1965 until September 1968 when he was medically discharged due to bilateral pes planus. *See* Record (R.) at 58–61. A medical board report contained in the record on appeal (ROA) indicates that the appellant had been diagnosed with "pes planus, symptomatic," which had existed prior to entry into service, had not been incurred in the line of duty, and had not been aggravated by service. R. at 55. The report also states that the appellant was unfit for duty and was discharged due to physical disability. *Id.* He was discharged from the

service on September 11, 1968. R. at 61. Although the regional office (RO) originally denied his claim for service connection for pes planus in April 1969 (Supplemental (Suppl.) R. at 1), the BVA ultimately granted service connection for bilateral pes planus in October 1970. Suppl. R. at 17–20. During 1971, the appellant was seen on a number of occasions with complaints related to his pes planus. R. at 78–94. No reference was made to the appellant's knees in any of those records. A consultation report of August 26, 1971, stated that the appellant's "subjective pain" can only be treated with analgesics. R. at 85.

A Supplemental Statement of the Case (SSOC) was issued on May 23, 1973. Suppl. R. at 24. Also, on May 23, 1973, the appellant filed a Notice of Disagreement (NOD) requesting service connection for his "back, leggs [sic], thighs and lower back as a direct result of [his] bilateral pes planus." Suppl. R. at 24. The RO treated the appellant's NOD as a request to reopen his claim and issued a rating decision on June 26, 1973, denying service connection for low back, leg, and thigh conditions. Suppl. R. at 27. The RO reasoned that the appellant had "failed to submit any evidence of an actual back, leg[,] or thigh disability." *Id.* Further, the evidence submitted failed to establish a diagnosis "relative to a back or leg condition." *Id.* An SSOC was issued on June 26, 1973, explaining that the evidence showed that "no definitive diagnosis had been established to account for the complaints of pain in the back, the legs[,] and the thighs." Suppl. R. at 31. Moreover, the SSOC stated that the noted secondary pain "is part and parcel of the bilateral pes planus." *Id.* The appellant responded on July 16, 1973, stating that he was experiencing continuous pain in his feet, legs, thighs, and lower back as a result of his feet. R. at 101. In a November 3, 1973, BVA decision, the Board determined that "[t]he veteran does not have an identifiable disease entity involving the low back, thighs[,] and legs related to the service-connected foot disorder" and therefore "a disorder of the back, thighs[,] and legs is not due to or the result of the service-connected foot disorder." R. at 108.

The first specific indication that the appellant had any complaints of pain in his knees was recited in the history section of a neuropsychiatric evaluation conducted by Dr. Charles W. Armistead on January 13, 1976. R. at 114. It noted that the appellant "has trouble with his feet, legs, knees, thighs, and back." *Id.* An orthopedic evaluation for pes planus by Dr. John W. Jackson on the same date showed that an examination of the knees "revealed crepitation on flexion and extension." R. at 117. That evaluation also indicated that the appellant's complaints as to pain in his calves, thighs, and back were secondary to his gait as produced by his foot disabilities. *Id.* The report failed to reference a reason for the pain in the appellant's knees. *Id.* A March 15, 1977, letter from Dr. Charles S. Kennon, a private orthopedist, to U.S. Congressman Joe D. Waggoner, Jr., provided the first impression that the appellant's "history of pain in the knees and low back [was] probably related to his flat footed problems." R. at 121–22. Dr. Kennon's letter further indicated that the appellant had complained of "pain in the knees and low back on prolonged standing or ambulation" and that the appellant had felt that the knee problems were related to his flat feet. R. at 121. Although Dr. Kennon discussed x-ray findings related to the appellant's feet, no such findings were discussed relating to the appellant's knees. *Id.*

On October 31, 1978, the RO received a letter from the appellant requesting that his knees, legs, and back be considered for service connection because he believed that his "feet were directly responsible for the pain . . . in these areas." Suppl. R. at 33–34. Thereafter, the RO issued a rating decision dated March 9, 1979, determining that an out-patient treatment report of February 15, 1979, did not show any knee condition and that service connection was not established for a "bilateral knee condition alleged." R. at 125. Additional correspondence from the RO reiterated that "out-patient treatment reports fail to show a back or knee condition." Suppl. R. at 36. Subsequently, the appellant submitted an NOD on March 30, 1979, alleging that the hospital records would show continuous treatment for back, knee, and leg pain. Suppl. R. at 39. At this time, the

appellant requested that his claim be re-opened. *Id.* On June 13, 1979, the RO issued a Statement of the Case (SOC) explaining that the evidence of record failed to show any knee or back disorder. Suppl. R. at 45. The appellant completed a VA Form 1–9, Appeal to the Board of Veterans' Appeals (Form 1–9) on August 14, 1979, asserting that service connection should be established for his knee and back disabilities. Suppl. R. at 47. A BVA decision was issued on February 7, 1980, which determined that "new evidence of record includes the Administration examination [of Dr. Jackson] in January 1976 and report of Dr. [Kennon] in March 1977" and that neither piece of evidence establishes "the existence of any separate and distinct disease entity involving the knees or back." R. at 132.

On April 13, 1981, the BVA issued a decision referring the matters concerning chronic conditions of the appellant's back and legs, as well as his nervous condition, to the RO because he was not service connected for those conditions. Suppl. R. at 51. The BVA decision further directed that the case be remanded with directions that the appellant be afforded a VA special examination of his feet by a podiatrist to determine the current level of severity of his bilateral pes planus. *Id.* On June 5, 1981, the appellant underwent an examination by Dr. Howard L. Chapman, a podiatric physician and surgeon. R. at 136–38. The examination report contained information relating to the appellant's feet, but it failed to render any opinion concerning the pain in the appellant's knees. *Id.* The RO issued another rating decision on September 10, 1981, which found no new factual basis to reconsider service connection for back, leg, or nervous condition. R. at 141–42. Subsequent undated correspondence from the VA notified the appellant that new and material evidence was needed to reopen his claims for service connection for ankle, knee, hip, and back conditions, and for hypertension because those claims had been previously denied and the appeal period had ended. R. at 144.

Apparently, although there is no documentation in the record or supplemental record, the BVA issued a decision in January 1988, remanding the appellant's case for development of the evidence. Suppl. R. at 61. On March 1, 1988, the appellant was examined by Dr. John C. Crenshaw, a VA examiner, who ordered x-rays of the appellant's feet, knees, and chest. R. at 146–49. Dr. Crenshaw commented on the thoroughness of Dr. Chapman's previous examination (R. at 148), but gave no impression concerning the appellant's knees. R. at 149. Once the development of the record had been completed pursuant to the BVA remand decision of January 1988, the BVA issued a subsequent decision on October 26, 1988, finding that entitlement to a total rating based upon individual unemployability due to service-connected disabilities had not been established. Suppl. R. at 65.

On November 1, 1988, the appellant filed an application with VA for compensation or pension for, inter alia, ankle, knee, and back injuries caused by his service-connected feet disorder. Suppl. R. at 69. In an SOC dated June 9, 1989, the RO denied entitlement to an evaluation for service-connected pes planus in excess of a 50% rating which had already been assigned. The RO reasoned that the appellant was already receiving the maximum amount that the rating schedule allowed for bilateral pes planus. Suppl. R. at 77–78. On June 23, 1989, the appellant again filed a Form 1–9 requesting service connection for his knee and back pain. Suppl. R. at 80. The appellant alleged that "service connected [sic] has been established for [his] knee (crepitation) [and] back (lumbar lordosis) [at a VA] Hospital, January 13, 1976, [by] Dr. John Jackson[,] as secondary to bilateral foot condition. See report." Suppl. R. at 84. On January 26, 1990, the BVA determined that the appellant's contentions relating to service connection for his back and knee disorders as secondary to his bilateral pes planus had not been developed for appellate review and referred them to the RO for further action. Suppl. R. at 90. In that decision, the Board also determined that the appellant's bilateral pes planus was rated at the maximum rating allowable under the diagnostic criteria. Suppl. R. at 97.

The appellant underwent a neurological examination conducted by Dr. William S. Bundrick, a private orthopedic surgeon, on May 22, 1990. R. at 156. The examination revealed that the appellant's "knee and ankle reflexes were intact and there was no localized muscle weakness." Id. At that time, Dr. Bundrick provided no opinion about the origin of the appellant's knee pain. Id.

On July 15, 1992, Dr. Crenshaw attempted to conduct a spine and joint examination of the appellant for etiological evaluation of the appellant's knee pain. R. at 174. Dr. Crenshaw's report stated:

When an attempt was made to examine the back and knee the veteran was unable to submit to any of the motions and testing, and [he] indicated by groaning that he was in severe pain and could not do anything with either his knee or back.... His foot problems made him unable to stand or move properly without great pain.

R. at 174–75. Dr. Crenshaw considered the examination "totally unsatisfactory" and suggested that the appellant should be hospitalized for observation and evaluation (O & E). R. at 175. X-rays taken on the same date revealed normal knees. R. at 181.

Thereafter, a rating decision was issued on December 1, 1992, denying service connection for arthritis of the appellant's knees and back. R. at 186. That decision was based on a review of the appellant's service medical records (SMR's) from 1965 to 1968, the VA examination of July 15, 1992, and the VA medical center reports of November 30, 1973, and January 13, 1976. R. at 185. Moreover, the decision stated:

[The] VA examination [on July 15, 1992,] was unsatisfactory, and the physician was unable to determine if [the veteran's] back and bilateral knee problems were caused by [his] service-connected pes planus. [The veteran's] claim will be reevaluated if [he] express[es] a willingness to report for an additional and more thorough examination.

Id. In a subsequent Form 1–9 completed by the appellant on December 16, 1992, the appellant contended that the "Chief Surgeon stated, back and knee condition is secondary to from [sic] feet." Suppl. R. at 107. An SSOC was issued on January 5, 1993, which explained that the evidence neither showed a diagnosis of any chronic knee or back condition during the appellant's service, nor established a chronic knee or back condition due to or resulting from the appellant's service-connected pes planus. R. at 189–94. The SSOC also referenced a BVA decision of January 26, 1990, in which the issue of service connection for knee disorders was referred to the RO for further action. R. at 191. On January 10, 1993, the appellant submitted another Form 1–9 asserting that in 1976 Dr. Jackson had concluded that his back and knee pain were a secondary condition caused by his bilateral foot condition. R. at 197. Apparently, an informal hearing was held in March 1993, at which the appellant's representative indicated that the appellant was willing to cooperate and that the case should be remanded. R. at 205.

Thereafter, the appellant was examined by Dr. Gordon M. Mead, an orthopedic surgeon, on May 3, 1993. Upon examination of the appellant's knees, Dr. Mead noted "mild crepitance on range of motion[, g]ood range of motion[, n]o instability[, n]o effusion[, n]o specific tenderness[,][and][x]-rays of the knees are negative." R. at 199. Further, Dr. Mead expressed his uncertainty as to "the etiology of this knee or back pain unless it comes from [the] abnormal gait from his foot problems." Id.

On December 7, 1994, the BVA issued a decision addressing the appellant 's entitlement to service connection for a knee disorder secondary to service-connected pes planus. R. at 202. Recognizing the appellant's previous assertion that he "was willing to cooperate," the BVA determined that additional development was necessary. R. at 205. Accordingly, the Board remanded the case to the RO to "schedule the veteran for a period of [O & E] in order to determine if [the veteran] currently ha[d] a disability of the knees or back." Id. In addition, the appellant was to be afforded an orthopedic examination during hospitalization. Id. Moreover, the BVA decision directed that "if a disability of the back or knees is found, it is requested that the examiner render an opinion as to the medical probability that the

disability of the back or knees is due to the service-connected pes planus." *Id.*

Subsequently, the appellant was seen by Dr. Keith Payne at the Louisiana State University Medical Center Hospital on April 6, 1995, as a referral for an abnormal chest x-ray. R. at 280. At that time, Dr. Payne indicated that the appellant's "main problems ... appear to be some arthritis of his knees and feet which bother him when he walks" and made a general assessment of "arthritis unknown etiology." R. at 280–81. On April 24, 1995, the RO requested that the Shreveport Medical Center conduct examinations to evaluate the appellant for hypertension, and joint, spinal, and mental disorders. Suppl. R. at 119. Further, the RO indicated as directed by the BVA remand, that a period of O & E of the appellant would be required. *Id.* On May 5, 1995, the appellant was admitted to the Shreveport Medical Center for two days. At that time, the physician noted that the appellant had been admitted for O & E.R. at 219. Further, the appellant informed the attending physician that the period of O & E was for "his knees, back, and feet." *Id.* Dr. William A. McBride, the attending physician, indicated that "the patient failed to participate in any activities on the floor and was not receiving much benefit from hospitalization." R. at 220. A physical examination taken at that time showed "I/VI systolic S1, coincident murmur loudest at the right upper sternal border and flat feet bilaterally." R. at 219. There was no diagnosis of the appellant's alleged knee disorder. *Id.*

On June 15, 1995, Dr. James H. Shipp, a VA examiner, conducted a joints and spine examination of the appellant. R. at 226. Dr. Shipp found the appellant's knees to be equal. *Id.* There were no findings of swelling, deformity, subluxation, lateral instability, loose motion, or crepitation. R. at 227. There was "passive motion of the knees to 120 degrees bilaterally—flexion, that is—and extension to 0." *Id.* The appellant was diagnosed with (1) pes planus, third degree, with degenerative joint disease of both feet; (2) normal knees, and (3) possible minor ankle limitation. *Id.* Dr. Shipp stated:

> It is my impression that the examination is totally unreliable.... Overall, regarding diagnoses # 2 and # 3, I seriously question the reliability of this man's full cooperation. He seems to have a self-imposed invalidism. If he has any knee problem, it is not secondary to the pes planus.

*Id.* X-rays of the knees and ankles were normal. R. at 233–34.

A July 17, 1995, rating decision denied service connection for a knee disorder secondary to service-connected pes planus. R. at 264. In reaching its denial, the RO reviewed, not only the appellant's SMR's from January 7, 1965, to September 11, 1968, and the treatment and hospitalization reports from the Shreveport Medical Center from September 15, 1997, to June 2, 1995, but also the orthopedic examination report of June 15, 1995. R. at 264–65. The RO specifically found that "the evidence does not show that a knee disorder, if any, is directly related to the [veteran's] service-connected condition of pes planus." R. at 266. In May 1996, the appellant appealed the RO's decision to the Board. R. at 281–307.

In the September 19, 1996, decision here on appeal, the Board found, inter alia, that (1) new and material evidence had been presented and that it therefore reviewed de novo the rating decision of December 1992 denying service connection for knee and back disabilities secondary to service-connected bilateral pes planus; (2) the preponderance of the evidence was against the appellant's claim for service connection of a bilateral knee disorder; (3) the appellant did not currently have a disease process or relating disability of either knee attributable to his service-connected pes planus; and, (4) the appellant's claim for service connection was well grounded and all relevant facts had been developed. R. 5–7. The Board further stated:

> The Board has considered the private medical reports of [Drs.] Kennon and Mead and the January 1976 VA report[,] which offered opinions to the effect that the veteran's complaints of knee pain were related to gait impairment caused by his service-connected pes planus. However, these doctors did not provide any objective findings referable to specific knee disability or render any diagnosis to which the

veteran's complaints could be attributed. Thus, given that the most recent VA examination determined that the veteran's knees were normal, the Board finds no probative evidence to establish that he has [a] knee disability which was caused or aggravated by his service-connected disability.

R. at 11. This appeal followed.

## II. ANALYSIS

### A. New and Material Evidence

■ Section 7104(b) of title 38, U.S.Code, provides: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." Section 5108 of title 38 states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown*, 4 Vet.App. 283, 286–87 (1993), *aff'd*, 17 F.3d 368 (Fed.Cir.1994); *Thompson v. Derwinski*, 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under section 7104(b), "the Board does not have jurisdiction to consider [the previously adjudicated claim] unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find." *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed.Cir.1996); *Butler v. Brown*, 9 Vet.App. 167, 171 (1996) (When new and material evidence has not been submitted in a previously disallowed claim "[f]urther analysis . . . is neither required, nor permitted."). Accordingly, in reviewing the appellant's claim, the Board was required to first determine whether new and material evidence had been submitted since the 1980 final disallowance, which it proceeded to do. It is now incumbent on this Court to review that jurisdictional determination. *See Barnett, supra.*

While this appeal was pending and before oral argument was heard in this case, the United States Court of Appeals for the Federal Circuit rendered its decision in *Hodge v. West*, 155 F.3d 1356 (Fed.Cir.1998). In *Hodge*, the Federal Circuit changed the law as it pertains to the submission of new and material evidence and offered guidance as to how this Court should review such determinations made by the BVA. First, the Federal Circuit invalidated the test adopted by this Court in *Colvin v. Derwinski*, i.e., that evidence was new and material sufficiently to reopen a claim if the evidence, when considered with the other evidence, would raise a reasonable possibility of changing the outcome. 1 Vet.App. 171, 174 (1991). The Federal Circuit proceeded to adopt the standard set forth in 38 C.F.R. § 3.156(a) (1997) as the appropriate standard for determining whether new and material evidence had been submitted. Second, as a result of *Hodge* and the Federal Circuit's recitation that the determination of whether new evidence is sufficiently material is a "fact-specific determination," "a deferential standard of review of these decisions under 38 U.S.C. § 7261(a) becomes the proper one." *Fossie v. West*, 12 Vet.App. 1, 5 (1998).

The last final disallowance of the appellant's claim was the Board's 1980 decision. R. at 258–67. In its September 19, 1996, decision, the Board determined that the evidence submitted was sufficiently new and material to reopen the appellant's claim. Thereafter, the Board undertook review of the appellant's claim for secondary service connection for his "bilateral knee disorder" on the merits. As stated above, the Court will no longer conduct a de novo review of a Board's reopening determination. Moreover, this Court has already held that "any evidence found to be material under the more stringent *Colvin* test would also have to be found to be material under the more flexible *Hodge* standard." *Fossie*, 12 Vet.App. at 4. Accordingly, applying a deferential standard of review, the Court finds that the Board did not commit any jurisdictional error in this case.

### B. Well–Grounded Claim

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence suffi-

cient to justify a belief by a fair and impartial individual that the claim is well grounded." The determination of whether a claim is well grounded is a matter of law which this Court reviews de novo. *Grivois v. Brown*, 6 Vet. App. 136, 139 (1994). The Court has held that a well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). "The quality and quantity of the evidence required to meet this statutory burden of necessity will depend upon the issue presented by the claim." *Grottveit v. Brown*, 5 Vet.App. 91, 92–93 (1993). Further, where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" is generally required. *Id.* at 93. In *Caluza v. Brown*, the Court held that for such a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Brown*, 9 Vet.App. 341 (1996), *aff'd sub nom. Epps v. Gober*, 126 F.3d 1464 (Fed.Cir.1997). Secondary service connection claims must also be well grounded. 38 U.S.C. § 5107(a); *Locher v. Brown*, 9 Vet. App. 535, 538 (1996); *Jones v. Brown*, 7 Vet.App. 134, 136–38 (1994). For the purposes of determining whether a claim is well grounded, the credibility of the evidence in support of the claim is presumed. *See Robinette v. Brown*, 8 Vet.App. 69, 75 (1995).

█ The Court finds that competent evidence has been submitted by the appellant and is sufficient to render the appellant's claim plausible and, thus, well grounded. The statements made by Drs. Jackson and Mead indicate that the appellant suffered from crepitation in the knees. R. at 117, 199. A letter from Dr. Kennon indicates that the appellant's history of pain in the knees "is *probably* related to his flat footed problems." R. at 121–22 (emphasis added). Moreover,

Dr. Mead opined that he was uncertain of the "etiology of this knee or back pain unless it comes from abnormal gait from [the appellant's] foot problems." R. at 199. Although there is other evidence of record which tends to indicate that the appellant's knees were intact and normal ( R. at 156, 181, and 227) and that any alleged knee problem suffered by the appellant was not secondary to pes planus (R. at 227), the statements of Drs. Jackson, Mead, and Kennon are sufficient to create the possibility or plausibility required to well ground the appellant's claim. *See Lathan v. Brown*, 7 Vet.App. 359, 366 (1995) (physicians' opinions that a "causal connection was possible, although less than certain" was sufficient to well ground the appellant's claim). Thus, the Court holds that the appellant's claim for service connection for a bilateral knee disorder as secondary to service-connected pes planus is well grounded.

### C. Secondary Service Connection for Knee Disorder

█ "Once a claim passes the well-groundedness hurdle and the Board adjudicates that claim, the Court reviews the Board's findings of fact regarding the claim under a 'clearly erroneous' standard of review." *Kirwin v. Brown*, 8 Vet.App. 148, 153 (1995); *see also* 38 U.S.C. § 7261(a)(4). Accordingly, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990). In addition, as set forth in 38 U.S.C. § 7104(d)(1), the BVA is required to provide adequate reasons or bases for its findings and conclusions on all material issues of fact or law. *See Gilbert*, 1 Vet. App. at 56–57.

Establishing service connection on a secondary basis requires a showing that a disability "is proximately due to or the result of a service-connected disease or injury." 38 C.F.R. § 3.310(a) (1997). Accordingly, because the appellant claims that his alleged knee disorder was caused by his service-connected pes planus, he must show service connection for the knee disorder on a second-

ary basis, which requires evidence that there is a knee disability that is proximately due to or the result of his service-connected disease. 38 U.S.C. § 1110; 38 C.F.R. § 3.310(a).

The appellant argues on appeal that although the "Board claimed to have considered the medical reports of Drs. Kennon, Mead and Jackson ... it discredited the reports of these doctors on the grounds that 'they did not provide any objective findings referable to specific knee disability or render any diagnosis as to which the veteran's complaints could be attributed.'" Appellant's Brief (Br.) at 9. The appellant further argues that the Board improperly concluded that there was no probative evidence to establish a knee disability caused or aggravated by his service-connected pes planus based on Dr. Shipp's finding that the appellant's knees were normal. *Id.*

First, there is no clinical evidence of knee pain to support the statements of Drs. Mead and Jackson. Dr. Jackson's examination of the appellant's knees on January 13, 1976, revealed "crepitation on flexion and extension" but the examination provided no impression or diagnosis concerning the knees. R. at 117. During the examination of the appellant's knees on May 3, 1993, Dr. Mead commented that there was mild crepitation through range of motion but no instability, effusion, or specific tenderness. R. at 199. At this time, Dr. Mead also expressed his uncertainty as to the etiology of the appellant's knee pain unless it came from the appellant's foot problems. *Id.* X-rays of the knees taken at that time were negative. *Id.* Likewise, Dr. Kennon's impression that the appellant's knee pain was probably related to his feet is unsupported by any objective findings. R. at 121–22. Moreover, the appellant concedes that Dr. Kennon's statement of probability, standing alone, is not conclusive. Appellant's Br. at 13.

 Second, as counsel for the appellant recognizes, once a claim is well grounded, "the presumption that the opinions of those physicians in favor of appellant are entitled to full weight no longer applies, and the Board can determine the question of service connection by weighing and balancing them, *together with all evidence, including*

*here the findings of Dr. Shipp.*" Appellant's Br. at 15 (emphasis added). Accordingly, "[i]t is the responsibility of the BVA, not this Court, to assess the credibility and weight to be given to evidence." *Owens v. Brown,* 7 Vet.App. 429, 433 (1995). It is the Board that must assess the credibility and probative value of evidence, and, provided that it offers an adequate statement of reasons or bases, the Board may favor one medical opinion over another. *Id.* The Court finds that Dr. Shipp's examination, his observation of the appellant's "self-imposed invalidism" (R. at 227) supported by Dr. Crenshaw's report in 1992 (R. at 174–75), and the subsequent x-ray findings in consideration with the other evidence, including the statements made by Drs. Mead, Jackson, and Kennon, create a plausible basis in the record for the Board's decision. Further, the Court finds that the Board has provided sufficient reasons or bases for its assessment of the weight and credibility given to all of the medical evidence of record.

### D. Appellant's Additional Arguments

#### 1. RO's Failure To Comply With BVA Remand Order

 The appellant argues that the Secretary has violated his duty to assist by failing to follow the BVA remand order and failing to provide a knee examination as part of the O & E hospitalization. Specifically, the appellant notes that he was hospitalized from May 8 through May 10, 1995, but that the ordered "orthopedic examination" did not take place until June 15, 1995. Appellant's Br. at 7–8. Therefore, the appellant urges this Court to reject the Board's decision because the RO did not comply with the specific terms of the BVA remand order.

This Court recently held in *Stegall v. West,* 11 Vet.App. 268 (1998), that the appellant has the right to VA's compliance with the terms and conditions set forth in remand orders from both this Court and the Board. In *Stegall,* this Court determined that the VA examination provided to the appellant did not comply with the BVA's remand directions and was inadequate for evaluation purposes. Consequently, this Court's review was frus-

trated. Moreover, the problem in *Stegall* arose when, after the remand, the appellant was admitted to a VA medical center (VAMC) in Waco, Texas, before he was able to undergo the examinations ordered by the remand which had been scheduled at a different VAMC in Dallas. 11 Vet.App. at 270.

In this case, the 1994 BVA remand decision specifically directed that the appellant be hospitalized for observation and evaluation of his knee condition. Further, the Board directed that "during the period of hospitalization, the veteran should be afforded an orthopedic examination ... [and that] to assist the examiner the claims folder must be made available for review prior to the examination." R. at 205. Documentation in the record indicates that on April 24, 1995, the RO directed the Shreveport Medical Center to perform the evaluation as required in the BVA remand. Suppl. R. at 118–19. Thereafter, the appellant was admitted to the same VAMC on May 8, 1995. R. at 219. The appellant was discharged from the hospital on May 10, 1995, due to his failure to participate. R. at 220. Subsequently, a joints and spine examination of the appellant, in which Dr. Shipp examined the appellant's knees, was conducted on June 15, 1995. R. at 226. X-rays were taken at that time showing normal knees. R. at 233–34.

The purpose of the 1994 BVA remand was to secure information, i.e., an examination and an opinion as to the appellant's alleged knee condition. Moreover, the BVA's inclination to order the remand was based, at least in part, on the appellant's assertion that he would finally be cooperative. R. at 205. The information which the BVA sought to secure was, in fact, provided in the June 15, 1995, orthopedic examination. Under the circumstances presented by this case, where the appellant's cooperation during the hospitalization period was less than enthusiastic, the Court concludes that the RO substantially complied with the BVA remand direction. Further, the Court's review of the record in determining the appellant's underlying claim is not frustrated by any failure by the RO to adhere to the BVA's remand order, as it was in *Stegall.*

This conclusion is reaffirmed by the fact that the appellant's representative, in an extensive brief submitted to the BVA in connection with the decision presently under review, did not note any difficulty with compliance with the remand order. R. at 285–307. Moreover, the representative did not argue that the Board failed to comply with the order. R. at 285–307. The appellant must first present his issues to the agency before presenting them to this Court. *Ledford v. West,* 136 F.3d 776, 779 (Fed.Cir. 1998). The appellant has failed to do so here.

Counsel for the appellant raised for the first time during oral argument the possibility that the orthopedic examiner did not, contrary to the BVA remand order, review the claims folder prior to conducting his examination and rendering his opinion. Again, this factual argument was not raised by the appellant in his brief, nor is there any evidence in the record to support this vague assertion. Similarly, there was no suggestion made by the appellant to the BVA that there was a failure to comply with the BVA remand. Absent evidence and argument, the Court will give no further consideration to this unsupported contention.

### 2. Failure to Evaluate Appellant's Pain In Knee Disorder Claim

 The appellant further argues that this case is not unlike *Spurgeon v. Brown,* 10 Vet.App. 194 (1997), where the RO was required to refer the appellant's claim for consideration of somatoform or psychogenic disease because the physician could find no etiological basis for the complained-of pain. Appellant's Br. 19–20. In *Spurgeon,* the appellant was service connected for postoperative residuals of a removal of an osteoma from his right wrist, and later sought an increased rating for the service-connected postoperative residuals of his osteoma removal. When no basis for the appellant's complaints of pain in the wrist was found, the examining physician "opined that there was 'probably a strong psychosocial overlay' to the problem of pain.'" 10 Vet.App. at 196. Recognizing that a veteran may be awarded a disability compensation for somatoform disorders, the Court held that consideration

should have been given to "whether [the veteran's] painful wrist could be attributed to his psychiatric problems." *Id.* In reaching its holding, the Court relied on other case law where the issue concerned increased ratings for pain which related to disabilities which were already service connected. *See Hicks v. Brown,* 8 Vet.App. 417, 422 (1995); *Voyles v. Brown,* 5 Vet.App. 451, 453 (1993). In addition, as the appellant recognizes, such ratings concerning pain must be supported by adequate pathology. Appellant's Br. at 16; *see also* 38 C.F.R. § 4.40. That is not the case here.

Unlike *Spurgeon,* in the instant case there is no objective evidence of a current knee disability; therefore, the Board has found no service connection, either on a primary or secondary basis, for the appellant's knee pain. While the appellant is service connected for a pes planus disability and, now, for a back disability resulting from the pes planus, there is no basis for service connection on either a primary or secondary basis for the knee pain. Thus, there is no pathology upon which the appellant's knee pain can be rated. The Court will not today extend the holding in *Spurgeon* to cases where neither service connection nor pathology has been established.

### III. CONCLUSION

Upon consideration of the Record, the briefs of the parties, and oral argument, the Court finds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert, supra; see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* Accordingly, the September 19, 1996, decision of the Board of Veterans' Appeals is AFFIRMED.