**Edward J. FOSSIE, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–1695.**

United States Court of Appeals for Veterans Claims.

March 5, 1999.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

### ORDER

PER CURIAM:

On October 30, 1998, the panel issued its opinion in the above referenced appeal, affirming the Board of Veterans' Appeals' decision which denied service connection for post-traumatic stress disorder. On November 9, 1998, the appellant filed a motion for reconsideration or, in the alternative, for en banc consideration. The Court will construe the motion as a motion for an en banc decision.

The panel notes that in his dissent to the Court's denial of his suggestion of en banc consideration, Judge Steinberg's characterization of the appellant's four-page May 6, 1996, letter as containing new information is inaccurate. In its February 1996 remand, the BVA ordered that the "veteran should be requested to provide additional details" and that "[w]ith the additional information obtained," then, but only then, the RO should prepare a summary and send it to the Environmental Support Group (ESG). R. at 292–

93. However, as the Board in its decision and the Court in its opinion noted, no such "additional details" were provided. Indeed, the appellant said as much himself in the May 6, 1996, letter: "I have sent all of the information that you'll [sic] asking for months ago." R. at 320. In view of the absence of "additional details," the dissent's assertion of a failure by the Secretary to fulfill his duty under *Stegall v. West*, 11 Vet.App. 268 (1998), is without factual or legal foundation.

█ Upon consideration of the foregoing, the record on appeal, and the appellant's motion for an en banc decision, and it not appearing that an en banc decision is necessary either to address a question of exceptional importance to the administration of laws affecting veterans' benefits or to secure or maintain uniformity of the Court's decisions, it is

ORDERED by the panel that the motion for reconsideration is denied. It is further

ORDERED that the motion for an en banc decision is denied.

KRAMER, Judge, concurring:

Although I agree with Judge Steinberg's analysis regarding VA's obligation under the VA ADJUDICATION PROCEDURE MANUAL M21–1 [hereinafter MANUAL M21–1], Part III, ¶ 5.14(b)(5) (1996), I do not support en banc review. First, the appellant's attorney did not raise the MANUAL M21–1 issue to the panel. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). Second, the panel's fact-specific application of *Stegall v. West*, 11 Vet.App. 268 (1998), is not a matter of exceptional importance or one that gives rise to uniformity concerns. *See* U.S. VET.APP. R. 35(c) ("Motions for full Court decision are not favored. Ordinarily they will not be granted unless such action is necessary to secure or maintain uniformity of the Court's decisions or to resolve a question of exceptional importance.").

STEINBERG, Judge, dissenting:

I cannot join in the en banc order denying the appellant's motion for a full Court decision. I believe that an en banc decision is necessary to "maintain uniformity in the Court's decisions", U.S. VET.APP. R. 35(c), and I find merit in the appellant's arguments regarding this Court's opinion in *Stegall v. West*, 11 Vet.App. 268 (1998), and believe that the Court should address them; the necessity for en banc action would have been obviated had the panel granted the motion for reconsideration and issued a new opinion that addressed *Stegall*.

I. **Compliance with Board Remand Order, Applicable Regulatory Requirements, and Duty to Assist**

A. *Compliance with* Stegall

In *Stegall*, 11 Vet.App. at 271, this Court held that "a remand by this Court or the Board [of Veterans' Appeals (Board)] confers on [a claimant], as a matter of law, the right to compliance with the remand orders" and "further that a remand by this Court or the Board imposes upon the Secretary of Veterans Affairs a concomitant duty to ensure compliance with the terms of the remand". In the case at bar, as noted in the panel opinion, the Board remanded this case in February 1996 and ordered a Department of Veterans Affairs (VA) regional office (RO), inter alia, to request corroborating evidence from the Department of Defense Environmental Support Group (ESG) as to the veteran's claimed in-service stressors for purposes of adjudicating his claim for post-traumatic stress disorder (PTSD) (Record (R.) at 293). *See Fossie v. West*, 12 Vet.App. 1, 3 (1998). Pursuant to that order, the VARO sent to the veteran a letter asking him to provide "a complete detailed description of the specific traumatic events/incidents which produced the stress that resulted in your claimed [PTSD]. This information should include the date(s) and place(s) of the incidents that occurred [and] the unit (division, regiment, battalion, or company) to which you were assigned/attached at that time." R. at 302. The RO also stated: "If the incidents involved the death of one or more of your friends, please furnish their names", and also indicated that the veteran could provide statements from other "individuals ... who have noted your conditions". *Ibid.*

In response, the veteran submitted a four-page letter that stated, inter alia, that he was sent to the "Mekong Delta in Dong Tam" in February 1967 with "the 9th Infantry division". R. at 322–23. He described being "bailed out" of a combat situation by the "11th Cavalry" and "airplanes called Puff the Magic Dragon". R. at 323. Finally, the veteran stated that, although he, "remember[ed] deaths that occurred in front of [him] a number of times", he did not know the names of the persons killed. *Ibid.* Additionally, he submitted lay statements of his mother and of a friend, both of whom described having observed postservice manifestations of stress. R. at 308–09, 316–19. Prior to the February 1996 remand ordered by the Board, the veteran had submitted a statement including the above-described information and a reference to his having gone to "Bearcat" and met new recruits arriving from "Fort Riley[,] Kansas"; the veteran has never been able to provide specific names of individuals. *See* R. at 169–73.

### B.  Compliance with Regulatory Requirements

The RO did not comply with the February 1996 order, and no corroboration from the ESG was ever requested. This was in direct violation of VA ADJUDICATION PROCEDURE MANUAL M21–1 [hereinafter MANUAL M21–1], Part III, ¶ 5.14(b)(5) (1996), which requires that VA *"always* send an inquiry [to the ESG] in instances in which the only obstacle to service connection is confirmation of an alleged stressor. *A denial solely because of an unconfirmed stressor is improper unless it has first been reviewed by the ESG . . ."* (emphasis added). It is well settled that VA cannot ignore provisions of the MANUAL M21–1 relating to PTSD that are favorable to a veteran when adjudicating that veteran's claim. *See Cohen v. Brown,* 10 Vet.App. 128,

138–39 (1997) (veteran entitled to have his case adjudicated under applicable MANUAL M21–1 provision); *Fugere v. Derwinski,* 1 Vet.App. 103, 109 (1990) (without adherence to Administrative Procedure Act notice-and-comment process and specific notice to public of intent to revoke MANUAL M21–1 provision protecting benefit entitlement, Secretary cannot revoke that provision). By failing to follow the applicable VA procedure requiring that the RO seek corroboration of the veteran's stressors from the ESG, the RO failed to comply with both the MANUAL M21–1 and the terms of the February 1996 remand ordered by the Board.

The Board offered the following justification for its affirmance of the RO's disregard of the terms of its February 1996 remand: "[T]he RO concluded[,] and the Board concurs, that the veteran's statements were *too* vague for referral to the ESG." R. at 5. The instant panel decision simply quoted the Board decision and concluded that the Board's decision was not "clearly erroneous", *Fossie,* 12 Vet.App. at 5–6; the panel did not discuss *Stegall* or the fact that the veteran had submitted the names of specific military groups, such as the 9th Infantry and the 11th Cavalry, as well as the aircraft nicknamed "Puff the Magic Dragon", that he said were involved in operations in the Mekong Delta around Dong Tam in February 1967.[1] The failure of the Board to follow the MANUAL M21–1 and enforce the terms of its own remand was potentially prejudicial to the veteran, *see Stegall,* 11 Vet.App. at 271 (finding prejudicial error in Board's failure to ensure compliance with its prior remand order), because part of the basis for the Board's denial of the veteran's PTSD claim was that the preponderance of the evidence was against a finding that the asserted in-service stressors existed (R. at 5), and, therefore, corroboration of stressors from the ESG could have

---

1. I note that the veteran in *Cohen v. Brown,* 10 Vet.App. 128, 131–36 (1997), provided to the RO information not dissimilar to that provided by the veteran in the instant case, including a statement from a clinical social worker observing the veteran's symptoms, descriptions of mortar attacks occurring in Da Nang, and statements that the veteran witnessed the deaths of people he knew (but did not provide the names of), and the RO in *Cohen* did refer the matter to the ESG.

Similarly, in *Moreau v. Brown,* 9 Vet.App. 389, 391–93 (1996), the Board had remanded the veteran's claim to the RO to request more detailed information from the veteran and for verification of stressors. It appears that the veteran in *Moreau* could not provide any new information (for example, the names of the servicepersons whose bodies he had dealt with), but the RO nevertheless referred the information that it did have to the ESG. *Id.* at 392.

resulted in the allowance of the claim. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc).

### C. Response to Majority

According to the majority, the Board ordered the RO in February 1996 to obtain "additional details" from the veteran. This is a correct statement of fact. *See* R. at 292–93. Then, according to the majority, once the "additional information" was obtained, the RO was to submit a summary of that information to the ESG. This is also factually accurate. *See* R. at 293. The majority then concludes that, because no additional information was obtained, the RO had no duty to proceed to submit to the ESG the information that the veteran had provided and, further, that the RO could proceed simply to deny the veteran's claim. There is no basis in the record for such an illogical conclusion. At no point did the February 1996 Board decision indicate that the RO could proceed to deny the veteran's claim prior to requesting and receiving a report from the ESG. Indeed, if the Board had done so, it would have been in violation of our caselaw and the provisions of the MANUAL M21–1 described above.

Hence, the majority's statement that my "assertion of a failure by the Secretary to fulfill his duty under *Stegall* . . ., is without factual or legal foundation" ignores the facts and law pertaining to this matter. I count at least two clear violations of *Stegall* here. First, the Board's remand ordered the RO to "request[ ] . . . additional details" from the veteran. R. at 292. The RO letter said: "[P]lease provide a complete detailed description of the specific traumatic events/incidents which produced the stress that resulted in your claimed [PTSD]". R. at 302. The veteran responded, as the majority indicates, by sending to the RO information that the RO already had in its possession and stating: "I have already sent you all, all of the information that you have requested of me. I just can't understand why I have to keep on repeating myself. . . ." R. at 322. Thus, the veteran had in fact complied with the RO's

request. The RO, however, had not complied with the BVA's order; the RO had been told to request "additional details" but had, in fact, only *stated* in its letter to the appellant that "additional information" would be required. R. at 302. In a separate section of that same letter, the RO then *requested* a "complete detailed description" of the events that he asserted had produced the stress that resulted in his PTSD; no new information was ever specifically requested by the RO. When the veteran provided such description and explicitly told the RO twice (R. at 321, 322) that he was *not* submitting any new information, the RO did not remedy its prior noncompliance with the BVA's order by asking the veteran to provide new information, that is, more than he had already provided; rather, the RO simply denied the veteran's claim. By affirming such noncompliance, the BVA joined with the RO in committing *Stegall* violation number one.

Next, the Board had ordered that "[w]ith the additional information obtained, the RO" was to prepare and submit a summary to the ESG. The RO was *not* told that such submission to the ESG was optional, but only that it was to occur upon the obtaining of additional information. The majority would read this as saying that because the *veteran* did not comply with the Board's remand order—even in the face of the RO's noncompliance—the RO could deny the claim without taking further action. Moreover, such a denial by the RO is in opposition to the applicable caselaw and provisions of the MANUAL M21–1 described above. Hence, the majority would interpret the BVA remand order as essentially telling the RO (1) to ignore the caselaw and MANUAL M21–1 requirement to refer to the ESG the veteran's stressor description and (2) to proceed to deny the veteran's claim without referral to the ESG. "It is the Secretary who is responsible for the 'proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department.'" *Stegall*, 11 Vet.App. at 271 (citations omitted). Unlike the majority, I would read the BVA remand as having ordered a result that comported with existing law. I would thus find that the Secretary, by not ensuring "the proper execution and ad-

ministration of all laws administered by the Department", committed, through the BVA and RO, *Stegall* violation number two.

### D. Duty to Assist

Even assuming that the fact that the veteran's statements were "vague" justified the RO's disregarding the explicit terms of the Board's February 1996 order, it appears to me that, because the veteran's PTSD claim has been found to be well grounded by the panel, *see Fossie*, 12 Vet.App. at 5; *Cohen (Douglas)*, 10 Vet.App. at 137, the RO failed in its duty to assist the veteran under 38 U.S.C. § 5107(a), which provides that once a claimant submits a well-grounded claim "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim". Because corroboration of asserted stressors is so fundamentally important in a PTSD claim, where the RO believes that the information provided by a veteran is too vague to submit to the ESG, I believe that section 5107(a) would obligate the RO to attempt to obtain more specific information from the veteran and/or to ask the ESG whether more specific information is in fact necessary (rather than simply to assume the ESG response)—especially when the Board has specifically ordered referral to the ESG. *Cf. Cohen (Douglas)*, 10 Vet.App. at 148–49 (Secretary violates duty to assist by failing to afford veteran an opportunity to respond to ESG's request for additional information when information provided by veteran found insufficient by ESG); *Zarycki v. Brown*, 6 Vet.App. 91, 99–100 (1993) (holding that, as part of duty to assist, VA is required to inform veteran of additional information sought by ESG). Because the panel opinion did not discuss the application of *Stegall*, or of the apparently applicable MANUAL M21–1 provisions, we are presented with the problem by virtue of this motion for an en banc decision. *See* U.S. VET.APP. R. 35(c) (motion for full Court decision "[o]rdinarily ... will not be granted unless such action is necessary to secure or maintain uniformity of the Court's decisions"). It is notable that the majority offers no response regarding this duty-to-assist analysis.

### II. Conclusion

For the foregoing reasons, I believe that we should grant the motion for an en banc decision and remand this matter for compliance with the MANUAL M21–1, *Stegall*, and section 5107(a), in the interests of maintaining consistency with this Court's precedents.