Citation Nr: 1438782 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 10-08 215 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for residuals of head trauma, for purposes of accrued benefits or for substitution.

2. Entitlement to service connection for liver disease to include hepatitis C and cirrhosis, as secondary to malaria for purposes of accrued benefits. 

3. Entitlement to special monthly compensation (SMC) based on the need for aid and attendance or being housebound for the purposes of accrued benefits or for substitution.

4. Entitlement to service connection for cause of the Veteran's death.




REPRESENTATION

Appellant represented by: Jodee C. Kayton, Attorney at Law


ATTORNEY FOR THE BOARD

M. R. Harrigan Smith, Counsel


INTRODUCTION

The Veteran served on active duty from September 1966 to September 1968. He died in July 2011 and the appellant is his surviving spouse.

This matter comes before the Board of Veterans' Appeals (hereinafter Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. By a rating action in December 2008, the RO denied the Veteran's attempt to reopen his claims of entitlement to service connection for bilateral hearing loss and service connection for a right ankle disability. Subsequently, in a February 2009 rating action, the RO denied the claims of entitlement to service connection for residuals of head trauma, and a rating in excess of 50 percent for PTSD. The Veteran perfected a timely appeal to those decisions.

The Board notes that the December 2008 rating action also denied the Veteran's attempt to reopen his claims of entitlement to service connection for a low back disorder, service connection for a right knee disorder, service connection for a left knee disorder, service connection for residuals of fracture of the left ankle and service connection for hepatitis C with cirrhosis. He perfected a timely appeal to that decision. However, in a statement, dated in March 2011, the Veteran's attorney indicated that they were withdrawing the issues of service connection for a low back disorder, service connection for a right knee disorder, service connection for a left knee disorder, service connection for residuals of fracture of the left ankle, and service connection for hepatitis C. Unfortunately, the Veteran passed away before a decision could be made regarding his appeal. Following the Veteran's death, the appellant filed a claim for Dependency and Indemnity Compensation (DIC), death pension, and accrued benefits that were received by the RO in August 2011. In August 2011, the appellant also requested that she be substituted as the claimant in the Veteran's appeal that was pending before the Board.

By a rating action in October 2012, the RO denied the claims of service connection for malaria, accrued benefits; service connection for liver disease to include hepatitis C and cirrhosis secondary to malaria accrued benefits; service connection for chronic kidney disease secondary to malaria accrued benefits; service connection for blood disorders accrued benefits; service connection for COPD secondary to malaria accrued benefits; service connection for congestive heart failure secondary to malaria accrued benefits; service connection for peripheral neuropathy accrued benefits; special monthly compensation based on need aid and attendance or housebound status accrued benefits; and service connection for cause of death. In her notice of disagreement, received in January 2013, the appellant filed a notice of disagreement to the denial of service connection for the cause of the Veteran's death, accrued benefits for service connection for peripheral neuropathy due to Agent orange exposure, accrued benefits for service connection for heart disease due to agent orange exposure, accrued benefits for special monthly compensation based on the need for aid and attendance or by reasons of housebound. A statement of the case was issued in April 2013. In her substantive appeal (VA Form 9), received in July 2013, she was only appealing accrued benefits for service connection for congestive heart failure due to agent orange exposure, accrued benefits for special monthly compensation based on the need for aid and attendance or by reasons of housebound, and service connection for the cause of the Veteran's death.
In November 2013, the Board reopened the Veteran's claim for entitlement to service connection for hearing loss, granted entitlement to service connection for a right ear hearing loss, and denied entitlement to service connection for left ear hearing loss. In addition, the Board reopened and granted a claim for entitlement to service connection for a right ankle disorder. The Board denied entitlement to service connection for congestive heart failure and for a rating in excess of 50 percent for PTSD. Finally, the Board remanded the issues of entitlement to service connection for residuals of head trauma, entitlement to service connection for the cause of the Veteran's death, and entitlement to SMC based on the need for aid and attendance or being housebound.

The RO determined that the Veteran had filed a notice of disagreement with the decision regarding the claim for entitlement to service connection for liver disease to include hepatitis C and cirrhosis secondary to malaria accrued benefits. The appellant perfected this appeal and, as such, it is before the Board.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issues of entitlement to service connection for liver disease to include hepatitis C and cirrhosis secondary to malaria accrued benefits, entitlement to service connection for the cause of the Veteran's death, and entitlement to SMC based on the need for aid and attendance or being housebound for the purposes of accrued benefits or for substitution are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).






FINDINGS OF FACT

The competent and credible evidence of record does not establish that the Veteran had residuals of a head trauma as a result of an in-service head injury or otherwise related to service.


CONCLUSION OF LAW

The criteria for service connection for residuals of head trauma are not met. 38 U.S.C.A. § § 1110, 1132, 5107 (West 2002); 38 C.F.R. § 3.303 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In a pre-adjudication letter dated in February 2009, the RO notified the Veteran of the evidence VA would assist him in obtaining and the evidence it was expected that he would provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002); Charles v. Principi, 16 Vet. App. 370 (2002). This letter also informed him of the types of evidence that would be considered to substantiate his claims and the information and evidence needed to sustain a claim for service connection. In addition, the letter met the notice requirements set out in Dingess. Furthermore, as the appellant is substituted in place of the Veteran and not undertaking a new claims process, the notification letters sent to the Veteran are sufficient.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

Post-service private and VA medical records Social Security Administration (SSA) records, and VA examination reports and opinions have been associated with the claims file. The Board has reviewed these records to establish if any other medical evidence relevant to the Veteran's claim exists and has determined that all relevant medical evidence has been associated with the record.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). Unfortunately, the Veteran then died in August 2011. His spouse was substituted in his place as the appellant. The Board remanded this case in November 2013 in order to obtain an opinion with regard to the Veteran's claim for entitlement to service connection for residuals of head injury. The opinion was provided in March 2014. The Board finds that the VA opinion is adequate because, as shown below, it was based upon consideration of the Veteran's pertinent medical history, and because the reports describe the disability in detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)).

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The appeal is thus ready to be considered on the merits.

Service Connection - Laws and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

A current disability must be present for a valid service connection claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) (complaints of pain alone do not meet the current disability threshold); Evans v. West, 12 Vet. App. 22, 31-32 (1998). The United States Court of Appeals for Veterans Claims (Court) has held that the current disability requirement is satisfied when a claimant has a disability at the time of filing the claim or during the pendency of that claim, even if the disability has since resolved. McLain v. Nicholson, 21 Vet. App. 319 (2007).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In relevant part, 38 U.S.C.A. 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).
Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted").

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ('[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence').

In deciding this claim, the Board has reviewed all of the evidence in the claims file, both the physical claims file and electronic (Virtual VA or VBMS) portion of the file, and has an obligation to provide an adequate statement of reasons or bases supporting this decision. See 38 U.S.C.A. § 7104(d)(1) (West 2002); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). While the Board must review the entire record, it need not discuss each and every piece of evidence, certainly not in exhaustive detail. See id. The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the claimant). 

The standard of proof to be applied in decisions on claims for Veterans' benefits is set forth in 38 U.S.C.A. § 5107. A Veteran is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See also 38 C.F.R. § 3.102. When a Veteran seeks benefits and the evidence is in relative equipoise, the Veteran prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2002); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Background

The Veteran contended that he had residuals of an in-service head injury.

Service treatment records reflect that the Veteran had a bad landing on March 1, 1967 while making a parachute jump during Airborne Training. He hit his head and was momentarily unconscious. Examination and X-rays were negative, but he became nauseated and was admitted for 24 hour observation. The Veteran was diagnosed with a mild cerebral concussion. It was noted on March 2, 1967, that the Veteran was asymptomatic, and that a full diet was tolerated. He was discharged on March 3, 1967, with no duty limitations. His August 1968 Report of Medical Examination was normal, with no mention of any residuals from his head injury. On his separation Report of Medical History, the Veteran denied a history of a head injury, loss of memory or amnesia, and nervous trouble of any sort. 

Private medical records reveal that the Veteran was in a motor vehicle accident in September 1972, with multiple abrasions, lacerations and contusions of the face, shoulder, hands, knees and buttocks. The Veteran was not diagnosed with a head injury.

An October 2000 VA medical record reflects the Veteran's report that he sustained head trauma when he was in a motor vehicle accident in 1991 with a loss of consciousness for about twenty four hours. The examiner noted that it appeared that the Veteran made a full recovery from this incident. 

An August 2008 VA computed tomography (CT) scan revealed no acute intracranial hemorrhage or mass effect, minimal small vessel disease, and minimal focal atrophy in the left frontal lobe which may be due to a prior infarct or prior trauma. December 2008 VA medical records reflect that he was having memory loss.

The appellant submitted a letter in February 2009 that noted that she was submitting medical records from Martin Army Hospital and from the Kissimmee VA medical center dated in November 2008 reflecting that the Veteran had a memory problem. She referred to the August 2008 CT scan showing minimal focal atrophy in the left frontal lobe which could have been due to a prior infarct or trauma. She noted that Dr. Cavanaugh mentioned that the Veteran had increased ammonia levels in his blood, and opined that "increased blood ammonia levels result in increased CMS glutamine which has been associated with cerebral dysfunction." The appellant stated that cerebral dysfunction had been associated with head trauma. A February 2009 letter from a personal friend of over forty years was also submitted, reflecting his observations that the Veteran's memory and lack of concentration had worsened over the years. A February 2009 letter was submitted from a fellow service member who witnessed the Veteran's in-service parachute accident. 

The Veteran was provided with a VA traumatic brain injury (TBI) examination in October 2009. He reported that he had begun having difficulty with his memory approximately fifteen to twenty years before, and that it had progressively worsened. The examiner noted that the Veteran had a documented head injury from a parachute malfunction in 1967, with a loss of consciousness for one to two minutes. The examiner diagnosed post-concussion syndrome with memory loss and headaches, and opined that it was less likely as not caused by or aggravated from traumatic brain injury. The rationale provided was that the Veteran a heavy alcoholic with end stage liver disease. In addition, he had chronic obstructive pulmonary disease (COPD) requiring continuous oxygen. The examiner opined that the Veteran's symptoms of headaches, fatigue, weakness, agitation, memory loss, anger concentration, dizziness, balance and mobility are all caused by the above mentioned illnesses. 

With regard to eye problems, the examiner opined that the Veteran's estropia was not related to service because the Veteran only noticed it over the prior 9 to 12 years, there was no mention of it in his service treatment records, and his examination after the parachute accident was normal. In terms of the Veteran's erectile dysfunction, the examiner opined that it was not related to head trauma as the Veteran was a heavy alcohol user and cigarette smoker for more than 25 years. In addition, the Veteran had end-stage liver disease with cirrhosis. 

The Veteran was also provided with a VA mental disorders examination in October 2009. The VA examiner noted that the Veteran had a remote history of having sustained a head trauma during a motor vehicle accident in 1991 with a loss of consciousness for approximately twenty four hours. The examiner opined that the cognitive disorder NOS and adjustment disorder with depressed mood was at least as likely as not permanently aggravated by the traumatic brain injury.

A December 2009 VA medical record shows that the Veteran reported a memory loss that had been present for ten years. It was noted that the Veteran had a TBI due to a malfunction of a parachute in 1967 with a loss of consciousness. The examiner found that he had cognitive decline mainly affecting memory. 

In April 2010, a VA neurologist stated that he suspected that the Veteran's memory problems could have been started soon after his head injury in March 1967, as it is known that head trauma is a risk factor for dementia or memory loss.

Unfortunately, the Veteran died on July [redacted], 2011. The cause of death listed on his death certificate was end-stage liver cirrhosis. No allegations have been made that his death was due to his in-service head trauma.

A VA opinion was obtained in March 2014. The examiner reviewed the Veteran's claims folder and opined that it was less likely as not that generalized memory loss could be attributed to one discreet event, including a parachute jump, motor vehicle accident, or two years of military service. The examiner noted that the records noted a report of gradual memory loss estimated by the Veteran starting around 2000. The examiner found that the October 2009 offered the most likely rationale for the reported difficulties with memory, noting that the Veteran's symptoms of headaches, fatigue, weakness, agitation, memory loss, anger, concentration, dizziness, balance, and mobility all were more likely than not caused by PTSD with depression. The examiner also noted that it was at least as likely as not that general memory loss was related to multiple medical and mental factors that together have a gradual, synergistic and negative impact on recall over multiple years, including chronic alcohol abuse, hepatitis C, COPD, chronic liver disease, anemia and depression.

Analysis

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan, supra. The evaluation of evidence generally involves a three step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Then, the Board must determine whether the evidence is credible. The Board must make an express credibility finding regarding lay evidence. Dalton v. Nicholson, 21 Vet. App. 23 (2007). Finally, the Board must weigh the probative value of the proffered evidence in light of the entirety of the record. 

In assessing the evidence of record, the Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. See Struck v. Brown, 9 Vet. App. 145, 152 (1996); Caluza v. Brown, 7 Vet. App. 498, 506 (1995); Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994); Abernathy v. Principi, 3 Vet. App. 461, 465 (1992); Simon v. Derwinski, 2 Vet. App. 621, 622 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164, 169 (1991). The competence of evidence, the Court has held, is a legal concept, which is useful in determining whether testimony may be heard and considered by the trier of fact, while the credibility of such evidence is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker, 10 Vet. App. at 74. See also Layno, supra. 

Here, there is no question as to whether the Veteran had an in-service head injury; his service treatment records clearly reflect that he had a bad landing in March 1967 while making a parachute jump during Airborne Training and was diagnosed with a mild cerebral concussion. Therefore, the issue in this case is whether the evidence shows that the Veteran had residuals of this in-service head injury. 

The Veteran has contended that the primary symptom resulting from his in-service head injury was memory loss. He alleged that he had difficulties with memory loss since his in-service head injury. The Board notes that the Veteran and his wife are competent to report symptoms that the lay witness observed and are within the realm of his or her personal knowledge; that is, those which are perceived through the use of the senses. Layno, supra. Memory loss falls into such a category. Therefore, the Veteran and his wife are competent to provide lay evidence with regard to his difficulties with memory. 

However, the Board is required to make a determination with regard to the credibility of the lay evidence in the record which supports the Veteran's claim. In such an instance, the Veteran's credibility affects the weight to be given to his testimony, and it is the Board's responsibility to determine the appropriate weight. Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). In this case, the Veteran has contradicted himself with regard to the onset of his memory loss. At his October 2009 VA examination, the Veteran reported that his memory problems had started 15 to 20 years prior. In December 2009, the Veteran reported that his memory loss had an onset 10 years prior. These inconsistencies in his statements diminish the probative value of the Veteran's statements with regard to the onset of memory problems.

Additionally, while the Veteran's service treatment records reflect treatment for and diagnosis of a head injury, the remainder of his service treatment records do not reflect that the Veteran suffered any residuals. In fact, on his separation Report of Medical History, the Veteran denied any head injury or problems with memory loss. These lay statements found in medical records when medical treatment was being rendered may be afforded greater probative value. The records were generated with a view towards ascertaining the appellant's then-state of physical fitness, they are akin to statements of diagnosis and treatment and are of increased probative value. Rucker v. Brown, 10 Vet. App. 67, 73 (1997). 

Therefore, the Board finds that the Veteran's statements regarding the onset of his memory loss are not credible, and therefore are assigned no probative value in determining whether his in-service head injury lead to ongoing residuals.

The Board notes that there were several additional lay statements submitted to evidence. The Veteran's friend asserted that his memory and concentration problems had worsened over the years; however, this statement did not provide a timeframe when these symptoms began. The letter from his fellow service member confirms the Veteran's in-service parachute accident; however, this is already of record. As such, these statements do not provide probative evidence relating to the issue at hand. 

The appellant also submitted a statement indicating that the Veteran's doctor had stated that the Veteran's increased blood ammonia levels were associated with cerebral dysfunction. In this regard, a lay person's account of what a doctor purportedly said is too attenuated and inherently unreliable to constitute 'medical' evidence. Robinette v. Brown, 8 Vet. App. 69, 77 (1995) (Veteran's statement that his physician told him that he 'most probably' had diabetes at time of his discharge from service was not sufficient medical evidence to establish service connection for diabetes). The appellant also stated that cerebral dysfunction has been associated with head trauma. Here, the evidence does not reflect that the appellant has the requisite medical expertise to provide an opinion as to causation. While lay witnesses are competent to provide testimony or statements relating to symptoms or facts of events that the lay witness observed and is within the realm of his or her personal knowledge, they are not competent to establish that which would require specialized knowledge or training, such as medical expertise. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). In the instant case, the Board finds that the question regarding the potential relationship between the Veteran's memory loss and his in-service head injury to be complex in nature. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). As such, the appellant's statements do not aid in substantiating the claim for entitlement to service connection for residuals of head trauma.

In terms of evidence providing an etiology between the Veteran's memory loss and his time on active duty, the Board notes that there is no medical evidence which provides such a link. 

The Veteran and the appellant have contended that the primary residual of the Veteran's head trauma has been memory loss. The Board notes here that, with respect to other potential residuals, the medical evidence of record does not link headaches, fatigue, weakness, agitation, memory loss, anger, concentration, dizziness, balance, and mobility problems with his in-service head injury. In fact, medical evidence has like these symptoms with the Veteran's already service-connected PTSD. The Board also notes that eye problems and erectile dysfunction have not been linked to the Veteran's in-service head injury.

With regard to the issue of whether the Veteran's memory loss and problems with concentration are related to his in-service head injury, there are several conflicting medical opinions of record. The Board notes that it is free to favor one medical opinion over another, so long as it provides an adequate basis for doing so. See Evans v. West, 12 Vet. App. 22, 30 (1998); Owens v. Brown, 7 Vet. App. 429, 433 (1995).

The August 2008 CT scan report reflected the provider's opinion that irregularities in the Veteran's brain reflected on the scan could be due to prior trauma. However, the provider did not indicate that time frame or nature of such trauma. Here, it has been established by the record that the Veteran's sustained head trauma both in service and after service in a motor vehicle accident. Without more information from the provider, it cannot be determined to any likelihood whether the irregularities were related to the Veteran's in-service trauma. In any event, the provider only found that these irregularities "may" have been due to prior trauma. This opinion is not decisive and on its own too speculative to be probative, as medical evidence that is speculative, general, or inconclusive in nature cannot support a claim. See 38 C.F.R. § 3.102 (noting that reasonable doubt does not include resort to mere speculation or remote possibility); see also Obert v. Brown, 5 Vet. App. 30, 33 (1993); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992); and Bostain v. West, 11 Vet. App. 124, 127-28 (1998), quoting Obert, 5 Vet. App. at 33 (and collectively finding that a medical opinion expressed in terms of 'may' also implies 'may or may not' and is too speculative to establish medical nexus); Warren v. Brown, 6 Vet. App. 4, 6 (1993) (similarly finding that a doctor's statement framed in equivocal terms such as 'could have been' is not probative). 

The December 2009 VA examiner noted that the Veteran had a TBI due to a 1967 parachute malfunction, and that the Veteran had cognitive decline mainly affecting memory. However, this examiner did not provide an actual link between memory problems and his in-service injury. As such, this evidence does not support a claim of entitlement to service connection for residuals of head trauma.

The April 2010 VA examiner noted that the Veteran's memory problems "could have" started soon after his head injury in March 1967. However, this examiner does not provide any rationale for the conclusion. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). In addition, this opinion is too inconclusive to be of probative value in this case. 

There are several VA opinions of record that weigh against the claim for entitlement to service connection for residuals of head trauma. The Board finds that the March 2014 opinion provided the most thorough review of the Veteran's history and rationale for the findings. The examiner noted that it was unlikely that the Veteran's generalized memory loss was linked to one discreet event, including his in-service parachute incident, and opined that it was more likely due to multiple medical and mental factors that together have a gradual, synergistic and negative impact on recall. In addition, the examiner noted the Veteran's assertion that his memory problems began 20 years after his discharge from service. The Board finds that this opinion carries the most weight in determining whether the Veteran's memory loss is linked to his in-service parachute accident. As such, entitlement to service connection cannot be granted for residuals of a head injury, as the competent and credible evidence of record does not support the claim.

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the appellant's claim of entitlement to service connection for residuals of an in-service head injury. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107.


ORDER

Service connection for residuals of head trauma is denied.


REMAND

This case was remanded in November 2013 in order to obtain an opinion as to whether the Veteran's death was related to service. As the Board acknowledged, the appellant maintained that the Veteran died as a result of his liver disease which, in turn, was caused by malaria. She further alleged that he was exposed to Agent Orange during his tour in Vietnam, which she believed could have initially caused the end stage liver disease that led to his death. Based on the appellant's contentions, the Board instructed the RO/AMC to obtain an opinion as to whether the Veteran's cause of death was related to service. The opinion was provided in March 2014. The VA examiner opined that it was less likely as not that the Veteran's end stage liver disease was caused by or a result of any disease or injury incurred during service to include malaria or herbicide exposure. The examiner provided the rationale that the Veteran was an adult lifetime alcoholic, and that the most likely cause of his liver disease was from alcohol abuse. 

The Board finds that an addendum opinion is necessary in this case for the following reasons. First, in September 2011, a VA psychiatrist opined that the Veteran died of liver failure relates to his chronic hepatitis C. This contradicts with the March 2014 VA examiner's opinion. On remand, the VA examiner should reconcile these conflicting opinions. In addition, the appellant has submitted contentions that the Veteran's alcohol abuse was actually to self-medicate due to his service-connected PTSD. The appellant has contended that the Veteran did not start drinking until after he returned from service and began suffering from PTSD. On remand, an opinion should be obtained as to whether the Veteran's PTSD caused him to self-medicate, abusing alcohol, and if so, whether that caused or aggravated his end-stage liver disease, ultimately leading to his death.

The appellant's claim for entitlement to special monthly compensation is dependent upon the outcome of the claim for entitlement to service connection for the cause of the Veteran's death. See 38 C.F.R. § 3.351. Therefore, the Board finds the special monthly compensation claim is inextricably intertwined with the claim of entitlement to service connection for the cause of the Veteran's death. As the cause of death claim is being remanded, the Board must defer adjudication of the special monthly compensation claim until the two claims can be adjudicated together. See Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are 'inextricably intertwined' when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Provide the Veteran's claims folder to an examiner to obtain an addendum opinion with regard to entitlement to service connection for a liver disorder and the cause of the Veteran's death.

The claims folder, including this remand and any relevant records contained in the Virtual VA or VBMS systems must be sent to the examiner for review; consideration of such should be reflected in the completed opinion or in an addendum. 

The examiner should provide an opinion as to the following:

(a) Please reconcile the conflicting medical opinions in the record regarding the etiology of the Veteran's liver disease (the September 2011 VA opinion that the Veteran's liver disease was caused by hepatitis C, and the VA opinion that it was caused by his alcohol abuse), and provide an opinion as to the etiology of the Veteran's end-stage liver disease; 

(b) Whether the Veteran self-medicated by abusing alcohol to deal with his PTSD? 

(c) Whether it is at least as likely as not (50 percent probability or more) that the Veteran's PTSD-related alcohol abuse caused his end-stage liver death and subsequent death;

(d) Whether it is at least as likely as not (50 percent probability or more) that the Veteran's liver disease was aggravated (has undergone a permanent, measurable increase in its severity as shown by comparing the current disability to medical evidence created prior to any aggravation) by his PTSD-related alcohol abuse and what part it played in his death,

The examiner must provide a rationale for each opinion given.

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what if any additional evidence would be necessary before an opinion could be rendered. 

The examiner is advised that the Veteran and his wife are competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

2. If any benefit on appeal remains denied, the AOJ should issue a supplemental statement of the case. Thereafter, the case should be returned to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
J.A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs