Citation Nr: 1452641 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 10-46 917 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUE

Entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Joseph R. Moore, Attorney


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

W. R. Stephens, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1942 to November 1945. He died in February 2009. The appellant is the Veteran's widow.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. The appellant presented testimony before the Board in August 2011.

This matter was before the Board in October 2011 and September 2012 and was remanded for further development. The Board issued an April 2013 decision which the appellant appealed. As a result, the United States Court of Appeals for Veterans Claims (Court) issued a December 2013 Order granting a Joint Motion for Remand (JMR), effectively remanding the matter back to the Board.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran died in February 2009 from acute respiratory failure and pneumonia; stage 4 sacral decubitus ulcer, acute renal failure, and type 2 diabetes were listed as significant conditions contributing to death but not resulting in the underlying cause.
2. Resolving reasonable doubt in favor of the appellant, the competent medical and other evidence of record reflects that the Veteran's sacral decubitus developed while in VA care; VA failed to sufficiently evaluate and timely diagnose the Veteran's sacral decubitus ulcer for purposes of instituting timely ameliorative treatment; and, the lack of timely VA medical attention/treatment contributed materially and/or substantially to hasten his death.


CONCLUSION OF LAW

The criteria for entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death have been met. 38 U.S.C.A. §§ 1151, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.312, 3.159, 3.361 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

When a Veteran suffers additional disability or death as the result of training, hospital care, medical or surgical treatment, compensated work therapy, or an examination furnished by the VA, disability compensation shall be awarded in the same manner as if such additional disability or death were service-connected. 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361.

38 U.S.C.A. § 1151 specifies two bases for entitlement. First, entitlement may be established on the basis of a showing of carelessness, negligence, lack of proper skill, error in judgment, or a similar instance of fault on the part of VA providers. But see generally Brown v. Gardner, 513 U.S. 115 (1994) (for claims filed prior to October 1, 1997, a claimant is not required to show fault or negligence in medical treatment). Second, entitlement may be established on a showing of an event not reasonably foreseeable.

To establish causation, the evidence must show that VA's hospital care, medical or surgical treatment, or examination resulted in additional disability or death. Merely showing that a Veteran received care, treatment, or examination and that the Veteran has an additional disability or died does not establish cause. 38 C.F.R. § 3.361(c)(1).

Such VA treatment cannot cause the continuance or natural progress of a disease or injury for which such care was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. 38 C.F.R. § 3.361(c)(2).

In addition to a showing of additional disability or death, there must be evidence showing either that VA failed to exercise the degree of care that would be expected of a reasonable health care provider, or that VA furnished treatment without the informed consent of the Veteran and his representative, in compliance with 38 C.F.R. § 17.32. Minor deviations from the 38 C.F.R. § 17.32 requirements that are immaterial under the circumstances of a case will not defeat a finding of informed consent. Consent may be express or implied as specified under 38 C.F.R. § 17.32(b), as in emergency situations. 38 C.F.R. § 3.361(d)(1).

Whether the proximate cause of a Veteran's additional disability or death was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. 38 C.F.R. § 3.361(d)(2).

In this case, the Veteran died in February 2009 at the age of 83. The Veteran's death certificate lists acute respiratory failure end pneumonia as the immediate causes of death, with stage for sacral decubitus ulcer, acute renal failure, and type 2 diabetes listed as significant conditions contributing to death but not resulting in the underlying causes. No autopsy was performed.

In a July 2009 claim, the appellant asserted that the Veteran died due to neglectful treatment at the Huntington VAMC. He developed a sacral decubitus ulcer under their care, which contributed to his death. 

VA treatment records dated from November 2008 to January 2009 indicate the Veteran was hospitalized for pneumonia. A December 7, 2008 note indicated the Veteran had broken or red areas preset including redness in the sacral area. In a December 9, 2008 note, the nurse noted a dark blue spot above the coccyx. The Veteran reported it was a birthmark. A December 10, 2008 note reported a large red/black area to the coccyx. A December 11, 2008 VA nursing note indicated that the Veteran had a small area to his buttocks from the ambulance transporters scrapping his bottom. 

On December 13, 2008, the Veteran was admitted to Bellefonte hospital and treated for decubitus to sacrum and foot. The Veteran was also reported being treated for dysphagia and pneumonia. A December 18, 2008 note indicates that the Veteran was noted to have a sacral ulcer on admission. The wound culture grew E. coli, and vancomycin-resistant enterococci (VRE) and blood culture, one out of two from admission grew VRE. In February 2009, the Veteran underwent excisional debridement of sacral decubitus ulcer, skin, subcutaneous tissue, and muscle. The post-operative diagnoses included sepsis secondary to fecal contamination of sacral decubitus ulcer. 

In a February 2009 death summary, the physician noted that the Veteran was admitted to the Emergency Room January 23 because of shortness of breath. An X-ray found pneumonia. He was also noted to have a stage IV decubitus ulcer. He had underlying diabetes. He was started on a tube feeding which he tolerated well. Because of the worsening sacral decubitus ulcer he was placed on a specialty bed. He underwent a diverting colostomy and debridement of the sacral ulcer. During his admission, his diuretic was stopped because of worsening dehydration. He had episode of hypoglycemia thus doses of his insulin needed to be adjusted. It took several days before he was extubated. He was septic. Liver function was abnormal. During the last few weeks of the Veteran's life, he was doing well and being planned for placement at Corner Stone. The Veteran became very short of breath. A chest X-ray showed worsening pneumonia. His renal function continued to deteriorate. The Veteran was noted to be anemic and again diuretic was on hold because of worsening renal function. The Veteran died on February [redacted]. 

In a November 2009 VA opinion, a VA clinician reviewed the Veteran's service treatment records, his treatment records from the Huntington VAMC for the two years prior to his death, the death certificate, and the appellant's claim. The VA clinician stated that after review of all records no additional tests or consultations were required the conclusion was that the Veteran's death was not a result of negligence of the Huntington VAMC. The rationale for that opinion is that the Veteran was in hospice and had several medical conditions and had three hospital admissions within the last two months of his life. The development date of the sacral ulcer was not known, only speculated. It was reported two days before discharge that there was a dark spot on the Veteran's back. The VA clinician stated that the wound did appear to worsen but it is inconceivable that they would present like the photos submitted over a few days. The clinician went on to state that there was no way to identify when the photos included were taken, but it was doubtful that they would have been taken at the VA two days after the wound was reported as a birthmark allegedly by the Veteran. Further, the VA clinician stated that the decision was based on the fact that the wound must have grown much worse after discharge for it to be cited as a cause of death as the Veteran died on February [redacted], 2009, some nine days after being discharged from the Huntington VAMC. The clinician also noted that the use of morphine to treat pain when one is not in pain is unneeded and dangerous. Examination of the treatment at the other hospital would be conclusive to determine the cause of death as well as what intervention were done to treat the Veteran's sacral ulcer. It appeared the VA staff identified what the Veteran and his wife were to do and the VA skin nurse prescribed the appropriate treatment to be following in house. The Veteran was transferred at a time after treatment was to begin. 

In February 2010 notice of disagreement, the appellant, through her representative, argued that the development of the ulcer is not in question as the VA records clearly indicate the Veteran did not have an ulcer on his coccyx upon admission to the VAMC. The appellant argued that the November 2009 opinion was inadequate, as the reviewer did not have the treatment records from the private hospital showing the Veteran was admitted the next day with an ulcer and should not have been discharged from VAMC to begin with. 

The appellant submitted multiple lay statements from others who attested that the Veteran did not have the sores when he was admitted to the VAMC, but that he had them upon his discharge. 

An August 2010 VA opinion found that the origin of the Veteran's sacral ulcer was questionable. The Veteran's prolonged period of being in bed after surgery would contribute to developing an ulcer, especially with his history of diabetes. His sacral area would have been compromised during ambulance transport as noted with scraping of the area. The Veteran's chronic disease process of diabetes and coronary artery disease could aggravate his disease process beyond normal progression. This provider could not attribute the Veteran's sacral ulcer originated in the VA facility. The records of care of the Veteran in the VA facility were consistent in that most experiences, competent practitioners or provider would have handled the case similar in all aspects of care. 

In July 2012, an independent medical examiner reviewed the records and provided the requested opinion. The examiner opined that it was less likely than not that the Veteran's sacral decubitus ulcer, and ultimately his death, was an additional disability proximately caused either by carelessness, negligence, lack of proper skill, error in judgment, or similar fault by VA or by and event not reasonably foreseeable. In explaining this opinion, the examiner stated that the actual date that the Veteran's sacral ulcer developed was unclear and only speculated, but that 'this has more to do with the cursory nature of the physical exams performed by all the nurses and physicians who cared for the Veteran than any other factor.' The examiner also stated that '[i]t would have been much more desirable to have a [thorough] admission physical examination for the Veteran that clearly documented the presence or absence of a sacral decubitus ulcer and for there to be documentation of the on-going assessment and appropriate treatment of decubitus ulcers, if present, throughout the hospitalization.' The examiner further stated that '[t]he nursing care plan for the Veteran's skin certainly met the standard of care, with the exception of the failure, until Dr. Tammo made the verbal order after being called in to see the Veteran by his Wife on 12/11/2008, that the patient needed a wound care consult and to be put into an airflow bed,' and that '[i]t was only the wound from the stage III pressure ulcer located mid lateral right foot that was receiving attention until that point.' The examiner ultimately stated that he was not convinced that the Veteran's sacral decubitus ulcer, and ultimately his death, was an additional disability proximately caused by the carelessness, negligence, lack of proper skill, error in judgment, or similar fault by VA. 

In July 2012, the Veteran's claim folders were forwarded to a VA medical officer, located at the Appeals Management Center, in Washington D.C., to be reviewed to obtain a medical opinion pertaining to entitlement to service connection for the cause of the Veteran's death under 38 U.S.C.A. § 1151. The medical officer opined that it was less likely than not that the Veteran's sacral decubitus ulcer resulted from VA hospital care; was an additional disability proximately caused by carelessness, negligence, lack of proper skill, error in judgment, or similar fault by VA or by an event not reasonably foreseeable; and contributed substantially or materially to the Veteran's death. The examiner noted that the Veteran was admitted to the Huntington VAMC a total of 12 times in 2008, the earliest being in April 2008. At that time, his problem list was extensive and it included a diabetic foot ulcer present for 2 years, as well as chronic diseases such as diabetes, heart disease, hypertension, and diabetic neuropathy and nephropathy. He was chronically ill. During these 12 admissions, he developed a sacral decubitus ulcer only on the last days of his last admission. The examiner noted that this reflect that the baseline skin care at the hospital was very good. Decubitus ulcers, especially in the elderly, are very common. The examiner described the treatment notes of December 2008. 

The examiner found that the VAMC admission of December 2008 was significant for what appears to be thorough wound care. There does not appear to be any negligence in the wound care of the Veteran. The Veteran was debilitated and malnourished as noted in the record. Poor nutrition resulted in an impaired immune system. Stresses can affect the immune symptoms, thereby impairing the ability to fight off infections. For the elderly medical interventions, though well intended, are more sources of stress, and the elderly take much more time to recover from stresses even as simple as a 4 or 5 hour automobile ride. During the December admission to Our Lady of Bellefonte Hospital, it was noted that the Veteran was not a candidate for an operative gastrostomy, as this would be a very high risk procedure. He was discharged after a tube was placed instead. The Veteran was admitted again in January 2009. He had pneumonia, from which he ultimately succumbed. He also had diabetes, anemia, severe undernutrition, and coronary artery disease and chronic kidney disease. While the Veteran did develop a decubitus ulcer while in the VA hospital, and while this did represent an additional disability, it did not reflect carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault by VA. The decubitus was not "an event not reasonably foreseeable." In additional, the decubitus did not "substantially or materially" contribute to the Veteran's death. In the overall pictures of his last months, the decubitus was a relatively lesser contributor than were the pneumonia, anemia, malnourishment, diabetes, chronic kidney disease, and coronary artery disease.

The appellant submitted an October 2014 private medical opinion. The physician reviewed the Veteran's medical records, corresponding VA opinions, and lay statements in the file. The physician, with a thorough and well-reasoned analysis, concluded that the Veteran's sacral ulcer developed while hospitalized at a VA facility, and a lack of proper care led to a worsening of the ulcer to the point that it was a substantial and material contributing factor in the Veteran's death. In reaching this conclusion, the physician explains his opinion in light of the medical evidence, including previous VA opinions. He explained that hospital records seem to indicate that "there was some confusion as to [the Veteran's] needs and it is unclear that he received the proper turning to prevent development of pressure ulcers." A "red spot" was first noted on December 7, 2008, in a nursing note. This spot was described as a dark blue spot and later a "blackish/blue" spot over the next few days, however, there was no mention of it in the notes by a doctor. On December 12, the physician notes, that the wound care consult was ordered, the wound was noted, dressed, and the patient was discharged. The physician stresses that it was 6 days from the time of noting the spot to the time a wound care consult was obtained. The physician proceeds to articulate the Veteran's medical history up until his ultimate death, including the wounds bacterial infection of Vancomycin resistant Enterococcus (VRE) and E. coli. The physician later states, after addressing each VA medical opinion, that:

There is no question that [the Veteran's] decubitus sacral ulcer developed during his hospitalization at the VA in December 2008. Review of the medical records demonstrates a lack of proper care that certainly rises to the level of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault by the VA. In addition, it is my medical opinion that [the Veteran's] decubitus ulcer, which eventually became infected with VRE, was more likely than not a substantial and material contributing factor in his eventual death. I base this opinion on a thorough review of [the Veteran's] medical records as well as the pertinent medical literature on the subject.

There is no adequate reason to reject the competent medical opinions of record that are favorable to the appellant. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (in evaluating the evidence and rendering a decision on the merits, the Board is required to assess the credibility and probative value of proffered evidence in the context of the record as a whole); Evans v. West, 12 Vet. App. 22, 26 (1998). The Board finds that when the private medical opinion submitted by the appellant is read in light of the other medical and lay evidence of record, the evidence is at least in equipoise. Thus, after carefully reviewing and weighing the competent medical evidence of record while affording the appellant the benefit of the doubt, the Board is satisfied that the Veteran developed the additional disability of a sacral ulcer while in VA care, and the lack of timely VA medical attention or treatment as likely as not caused or contributed materially in the continuance or progression of the fatal disease process that led to the Veteran's demise. 38 U.S.C.A. § 1151; 38 C.F.R. §§ 3.102 , 3.312, 3.361.










ORDER

Dependency and indemnity compensation under § 1151 for the Veteran's death is granted.




____________________________________________
A.C. MACKENZIE
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs