Citation Nr: 1542429 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 11-18 447 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Atlanta, Georgia


THE ISSUE

Entitlement to service connection for a left ankle disorder.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Harold A. Beach, Counsel

INTRODUCTION

The Veteran served on active duty from June 1976 to October 1981.

This case was previously before the Board of Veterans' Appeals (Board) in April 2015, when it was remanded for further development. Following the requested development, the VA Appeals Management Center in Washington, D.C. confirmed and continued the denial of entitlement to service connection for a left ankle disorder. Thereafter, the case was returned to the Board for further appellate action.

In January 2015, during the course of the appeal, the Veteran had a video conference with the Veterans Law Judge whose signature appears at the end of this decision. 


FINDING OF FACT

The presence of a chronic, identifiable left ankle disorder has not been established. 


CONCLUSION OF LAW

The claimed left ankle disorder is not the result of disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1131, 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.303 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

The VA's Duties to Notify and Assist

Prior to consideration of the merits of the appeal, the Board must determine whether the VA has met its statutory duty to notify and assist the Veteran in the development of his claim of entitlement to service connection for a left ankle disorder. After reviewing the record, the Board finds that the VA has met that duty.

After the claim was received, the RO advised the claimant by letter of the elements of service connection and informed him of his and VA's respective responsibilities for obtaining relevant records and other evidence in support of his claim. The duty to notify is satisfied. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Dingess/Hartman, 19 Vet. App. 473 (2006).

VA's duty to assist includes helping claimants to obtain service treatment records and other pertinent records, including private medical records. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The claims file contains the report of the Veteran's December 1975 service entrance examination, his service treatment records, records reflecting his treatment after service, the transcript of his January 2015 video conference, and a February 2015 statement from the Veteran's wife. The duty to obtain relevant records is satisfied. See 38 C.F.R. § 3.159(c).

The video conference transcript shows that the Veterans Law Judge explained the issue fully and suggested the submission of evidence that the Veteran may have overlooked and that would be advantageous to his position. See Bryant v. Shinseki, 23 Vet. App. 488 (2010). The Veterans Law Judge left the record open for 30 days, so that the Veteran could submit additional evidence to support his claim. As such, the conduct of the hearing was performed in accordance with the provisions of 38 C.F.R. § 3.103(c)(2). Therefore, there was no prejudice to the Veteran's claim as a result of the conduct of that hearing. See Bryant, 23 Vet. App. at 498 (citing to 38 U.S.C. § 7261(b)(2); Shinseki v. Sanders, 129 S. Ct. 1696, 1704 (2009)).

The VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Appropriate VA medical inquiry has been accomplished and is factually informed, medically competent and responsive to the issues under consideration. Monzingo v Shinseki, 26 Vet. App. 97 (2012); Barr v. Nicholson, 21 Vet. App. 303 (2007). 

In sum, the Veteran has been afforded a meaningful opportunity to participate in the development of his appeal. He has not identified any outstanding evidence which could support his claim; and in April 2015, he stated that he had no additional evidence or information to submit. There is no evidence of any VA error in notifying or assisting the Veteran that could result in prejudice to him or that could otherwise affect the essential fairness of the adjudication. Accordingly, the Board will proceed to the merits of the appeal.

Analysis

In this decision, the Board will discuss the relevant law which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code ("38 U.S.C.A. "), regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations ("38 C.F.R. ") and the precedential rulings of the Court of Appeals for the Federal Circuit (as noted by citations to "Fed. Cir. ") and the Court of Appeals for Veterans Claims as noted by citations to "Vet. App. ")

The Board is bound by statute to set forth specifically the issue under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104(d), see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999), Gilbert v. Derwinski, 1 Vet.App. 49, 56, 57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts. 

Service connection may be granted for disability or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1131. Generally, the evidence must show (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. See Cuevas v. Principi, 3 Vet. App. 542 (1992). In addition, the applicable law and regulations permit service connection for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Generally, the Board first determines whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 (2007). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159. Lay evidence may be competent and sufficient to establish a diagnosis of a condition when:

(1) A layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer);
(2) The layperson is reporting a contemporaneous medical diagnosis, or;

(3) Lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. 

Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). 

During his January 2015 video conference, the Veteran argued that he had a chronic left ankle disorder which was primarily the result of a left ankle injury in January 1981. Therefore, he maintained that service connection was warranted. However, after carefully considering the claim in light of the record and the applicable law, the Board is of the opinion that the preponderance of the evidence is against that claim. Accordingly, the appeal will be denied. 

The Veteran is competent to testify about what he experienced during and since his separation from the service. For example, he is competent to report that he first injured his left ankle in the service and that has experienced chronic left ankle pain since that time. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). However, there is no evidence to suggest that he is competent by training or experience to diagnose any pathology causing that pain. The question of an etiologic relationship between an injury and the development of a chronic, residual disorder involves a medical issue. Thus, the question of etiology in this case may not be competently addressed by lay evidence. See Davidson, 581 F.3d at 1316. 

The evidence does not show a present, chronic, identifiable left ankle disorder which originated in service and the evidence does not show his inservice symptoms supporting a later diagnosis of an inservice disorder. Not only is a chronic, identifiable left ankle disorder uncorroborated by the evidence in the service; it is contradicted by more contemporaneous, probative, and accurate evidence of record. Curry v. Brown, 7 Vet. App. 59 (1994) (contemporaneous evidence has greater probative weight than a history reported by the Veteran.). The Veteran's lay assertions have been investigated by competent medical examination and found not supportable. Jandreau, 492 F.3d at 1376-77 .

Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. See Rucker v. Brown, 10 Vet. App. 67 (1997). In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan, supra. 

In deciding this appeal, the Board must weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307 (1999); Evans v. West, 12 Vet. App. 22 (1998). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert's qualifications and analytical findings. The probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993). Contemporaneous evidence has greater probative weight than a history reported by the Veteran. Curry v. Brown, 7 Vet. App. 59 (1994). However, medical evidence that is speculative, general or inconclusive in nature cannot support a claim. See Obert v. Brown, 5 Vet. App. 30 (1993).

The report of the Veteran's December 1975 service entrance examination is negative for any complaints or clinical findings of a left ankle disorder of any kind. Thus, at the time of his entry in service, the Veteran's left ankle was presumed to be in sound condition. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b) (2015). 

During service in January 1981, the Veteran was treated for complaints of left ankle pain, after running two miles. There were no complaints or evidence of specific trauma or a twisting injury. Although tenderness over the anterior fibia talar area was noted, there was no effusion or instability and the Veteran demonstrated a full range of left ankle motion The assessment was a questionable sprained left ankle. However, a chronic, identifiable left ankle disability was not identified, and the Veteran served the remaining 91/2 months of service without any further complaints or clinical findings of a left ankle disorder of any kind. 

A left ankle disorder was not reported again until June 1986, when the Veteran fell and injured the ankle. While the health care provider suggested that the Veteran had sprained the ankle, a chronic, left ankle disorder was not identified. 

In January 2015, the Veteran's wife reported that following the Veteran's separation from the service, he had gone to his family doctor on several occasions. She noted that X-rays were negative for a fracture and that the Veteran was told he would just have to live with it. 

In June 2010, the Veteran was examined by the VA to determine the nature and etiology of any left ankle disorder found to be present. The examiner diagnosed left ankle strain but was unable to find a nexus to service without resorting to speculation. As noted above, medical evidence that is speculative, general or inconclusive in nature cannot support a claim. See Obert v. Brown, 5 Vet. App. 30 (1993). 

Pursuant to the Board's remand directives, the Veteran underwent a May 2015 VA examination. The examiner did not find the presence of a chronic, identifiable left ankle disorder. Citing the medical literature, her own clinical experience, and the lack of continuing left ankle symptomatology in or after service, she noted that ankle sprains were known to be acute and transitory in nature and to resolve without residual disability. She found nothing in the Veteran's record to alter that conclusion. 

During the examination, the examiner suspected the presence of instability or dislocation; however, the examiner noted that there was no anterior/drawer sign or talar tilt test to support that suspicion. She offered the Veteran X-rays, however, he declined. 

The examiner noted that it would be pure speculation to conclude that the Veteran had left ankle pain, weakness, fatigability or incoordination which significantly limited his functional ability with repeated use over a period of time. However, such speculation was referring to the severity of the Veteran's left ankle disorder rather than the etiology and did not affect the examiner's opinion with respect to the question of service connection. 

The VA examiner's opinion is not only consistent with the other evidence on file, it is consistent with Veteran's acknowledgement at his video conference that he does not have a current diagnosis of a left ankle disorder. Essentially, the Veteran is seeking service connection for left ankle pain. Pain alone, without the presence of a diagnosed or identifiable underlying malady or condition, does not constitute a disability for which service connection may be granted. Sanchez-Benitez v. West, 259 F.3d 1356, 1361-1362 (2001). 

In sum, the preponderance of the evidence is against a finding that the Veteran had a chronic, identifiable left ankle disorder in service or that he has one currently. Therefore, he does not meet the criteria for a service connection. Accordingly, service connection for a left ankle disorder is not warranted, and the appeal is denied. 

In arriving at this decision, the Board has considered the doctrine of reasonable doubt. However, that doctrine is only invoked where there is an approximate balance of evidence which neither proves nor disproves the claim. Because the preponderance of the evidence is against the Veteran's claim, the doctrine of reasonable doubt is not applicable. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015). 


ORDER

Service connection for a left ankle disorder is denied. 


____________________________________________
VITO A. CLEMENTI
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs